**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Mark William MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 18, 2008.

Filed Jan. 28, 2009.

William K. Sayer, Public Defender, Stroudsburg, for appellant.

Elmer D. Christine, Jr., Asst. Dist. Atty., Stroudsburg, for Com., appellee.

BEFORE: STEVENS, KLEIN, and CLELAND, JJ.

OPINION BY STEVENS, J.

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Monroe County on November 26, 2007, following Appellant's plea of guilty to the charge of murder of the third degree.[1] Herein, Appellant contends that the trial court abused its discretion when, in imposing sentence, it considered a charge that was *nolle prossed* as part of the plea agreement. We affirm the judgment of sentence.

¶ 2 On October 2, 2007, Appellant pled guilty to criminal homicide, murder of the third degree, in the October 31, 2001 killing of Helen Theresa Biank. "Specifically, [Appellant] admitted to shooting [Ms. Biank] in the back of her head with a Remington XP 100 firearm. In return for his plea, the Commonwealth agreed to *nolle pros* the remaining charges (Aggravated Assault, Arson, Tamper with/Fabricate Physical Evidence)." Trial Court Opinion filed 2/21/08 at 1. Thereafter, on November 26, 2007, Appellant was sentenced to a fifteen (15) to forty (40) year term of imprisonment.[2] Appellant filed a Motion for Modification of Sentence, which

---

1. 18 Pa.C.S.A. § 2502(c).

2. It is noted that the fifteen (15) year sentence was within the standard range for third degree murder.

was denied by the court on February 20, 2008. The present appeal followed.[3]

■ ¶ 3 Herein, Appellant contends that the trial court abused its discretion when, at the time of sentencing, it considered an arson charge that was *nolle prossed* as part of his plea agreement. With regard to this claim, it is well-settled that appeals of a discretionary aspect of a sentence are not reviewable as a matter of right. *Commonwealth v. McNear*, 852 A.2d 401, 407 (Pa.Super.2004). In order to invoke this Court's jurisdiction, an appellant must set forth in his brief a separate and concise statement of reasons relied upon in support of his appeal. Pa.R.A.P. 2119(f)[4]; *see Commonwealth v. Hudson*, 820 A.2d 720, 727 (Pa.Super.2003). Therein, the appellant "must demonstrate that a substantial question exists that the trial judge's actions were either inconsistent with the specific provisions of the Sentencing Code, or contrary to the norms which underlie the sentencing process." *Commonwealth v. Rickabaugh*, 706 A.2d 826, 847 (Pa.Super.1997) (quotations and citations omitted).

¶ 4 In the present case, Appellant has included in his brief a statement of reasons relied upon for allowance of appeal in which he references this Court's assertion that, "A manifest abuse of discretion exists when a sentence is enhanced due to charges that have been *nolle prossed* as part of a plea agreement, because notions of fundamental fairness are violated." Brief of Appellant at 10, *quoting Common-wealth v. Stewart*, 867 A.2d 589, 593 (Pa.Super.2005). In that Appellant's statement presents a substantial question for review, we will address the merits thereof. *See Id.*

¶ 5 In reviewing a sentencing claim, we are mindful that:

We must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. An appellate court will not disturb the lower court's judgment absent a manifest abuse of discretion. In order to constitute an abuse of discretion, a sentence must either exceed the statutory limits or be so manifestly excessive as to constitute an abuse of discretion. Further, a sentence should not be disturbed where it is evident that the sentencing court was aware of sentencing considerations and weighed the considerations in a meaningful fashion.

*Commonwealth v. Fish*, 752 A.2d 921, 923 (Pa.Super.2000) (citation and internal quotations omitted).

■ ¶ 6 In fashioning a sentence, "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of offense as it relates to the impact on life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "[A] court is required to con-

---

**3.** Pursuant to the court's order to do so, Appellant filed a concise statement of matters complained of on appeal, to which the court issued a statement in accordance with Pa. R.A.P. 1925(a). In the court's statement, it referenced its February 21, 2008 Opinion in which Appellant's present contention regarding sentencing was addressed.

**4.** Rule 2119(f) states as follows:

An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

Pa.R.A.P. 2119(f).

sider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa.Super.2002) (citation omitted).

¶ 7 Herein, at the time of sentencing, Appellant's counsel supplemented the presentence investigation report ("PSI") with three (3) letters received on behalf of Appellant. N.T. 11/26/07 at 9.[5] Counsel proceeded to present Appellant's father, mother, and brother as witnesses. Appellant then offered comments on his own behalf.

¶ 8 Commonwealth counsel presented to the court a letter from one (1) of Ms. Biank's friends, which the court read and attached to the PSI. Counsel then presented the testimony of Ms. Biank's sister and mother, and two (2) of Ms. Biank's longtime friends.

¶ 9 Prior to imposing sentence, the distinguished trial judge Margherita Patti Worthington extensively explained:

Okay. I've read the PSI thoroughly several times. I've read all of the letters that all of you have written and attached and letters from some who were not here that have been attached.

In any case like this, the tragedy, as you all know goes far beyond the deceased. And I've heard some things today that I didn't know about, and I don't know the background of it. But I heard that Ms. Biank's mother, Ms. Myers, hasn't seen her grandchildren in six years. [6] I don't know why that is. But that's, if you had a relationship with them before, quite a tragedy for everyone involved that is an extension of all of this.

I heard for the first time that, Mr. Miller, you were at the wake and that in front of these children and family put flowers on the grave. [7] I have to tell you it sent a bit of a chill up my spine hearing that, so I did not know that.

At the same time, I heard from your family who described you as a caring, loving son and grandson who was helping your family throughout the years. Again, your actions have harmed this family and your own family, people who are good people and working people and care about you. So this tragedy extends throughout the deceased's family and friends and your own family and friends.

And the word I kept hearing over and over again was mother, the deceased's mother. The deceased was a mother. Children who have no mother, a mother who has no daughter, you know, sisters who have no sister, nieces who have no aunt, a mother who's not going to see her son, your mother.

You know, as I read this for the first time, it was replete with the word accident. And [your counsel] has explained what you meant by that, and you yourself have explained now what you meant by it which was fooling around, you know, messing around with a weapon of destruction.

You know, I see the pictures attached here and the description of the wound, how that could have happened, the close range. It does not jive to me with fool-

---

5. The court noted that it had received four (4) letters the previous week that it had read and would also attach to the PSI. *Id.* at 10.

6. Ms. Myers addressed Appellant by stating, *inter alia*, "You took from me not only my Helen but my granddaughters, Missy and Emily, because I haven't seen them in six years

because their father wouldn't allow me or my daughters to see them." *Id.* at 37.

7. Ms. Myers expressed to Appellant, "You came to Helen's wake. You put in front of her grieving family and children-you put flowers on her grave." *Id.* at 37.

ing around with a gun. Perhaps you have been smoking crack. I don't know.

With respect to the PSI, this is murder of the third degree. So in the mitigated range, it's 60 months. And I realize that you're asking me to find mitigating circumstances in this case in that Mr. Miller has taken full responsibility. I do not find that as a mitigating circumstance.

Everybody who enters a plea of guilty takes the responsibility by entering the plea for one reason or for another. And in most cases, the reason is perhaps their exposure if convicted of all crimes at trial might be greater than what it would be in a plea, and, you know, the Commonwealth's evidence, et cetera, and we all know that.

So I don't find that to be mitigation because the PSI is also replete, again, with Mr. Miller saying this was an accident and, in addition, you know, I think I'm going to withdraw my plea. In other words, you know, maybe I don't think I should-you know, it's one thing to say I'm not articulate and this was an accident and here's what I meant by this was an accident. But that's not the way this PSI reads, and we all know that. I've read it thoroughly.

I'm also considering the fact that Ms. Biank was killed, was deceased, and then this fire comes through, that there was an answering machine tape taken out of the machine, that there was all this other stuff that was, you know, obviously to cover what happened.

And to me then we wait four years. And the way this has come to the Court's attention and the way, Mr. Miller, you come to the court's attention is not through the goodness of your heart in taking responsibility. It's because of police work and what transpired over those four years. It has nothing to do with somebody standing up two days later, a month later, three months later and saying I'm really remorseful or I have a guilty conscience even and coming to the Court. That's not the way this happened.

It's a felony of the first degree. Mr. Miller, I do consider, of course, and I must consider that you have a prior record score of 0. You have a very limited criminal history.

. . . .

Added to that, apparently since you've been incarcerated, Mr. Miller, there have also been write-ups in the jail itself for conduct which I've read and are part of the PSI. You know, I don't understand that.

The maximum penalty on this is 20 with a range being 72 up to the statutory max. And I've considered all these things in coming up with my sentence in this matter.

Ms. Biank, by all statements and all that I have heard and everything I've read, must have been a very special woman. And I said, the tragedy goes beyond her death because this-there's nothing anybody here can do about that. But I look around not only to her family and to yours, and that's where the tragedy will continue.

. . . .

And, you know, the only thing I didn't mention was your own children. You have your own children as well who are now without—I realize that there was not any—nothing given in the statement regarding them, and I understand why. But I will just say that now they are also without a father.

The tragedy of the fire as well and the lives of our firefighters and police and everyone else that were risked in putting out that fire is something I also consider because we—you know, this

could have been—there could have been even more lives either injured or taken. So while I have ranges to work within by the legislature and statutorily, I've considered all these things. This carries an offense gravity score of 14.

*Id.* at 48–54.

¶ 10 As clearly evidenced by the foregoing, Judge Worthington carefully reviewed the PSI and letters presented, and considered many factors in imposing sentence, including: the seriousness of the offense; the situation that faced firefighters and police when they arrived at Ms. Biank's residence; the manner in which the murder of Ms. Biank impacted her family and friends and Appellant's family; Appellant's apparent unwillingness to accept responsibility for his actions; and Appellant's misconduct while incarcerated. Contrary to Appellant's assertion that the trial court improperly considered the charge of arson that was *nolle prossed* as part of the plea agreement, we do not find that the court's mere reference to the fact that the lives of firefighters and police were at risk due to Ms. Biank's residence being ablaze when these individuals arrived on the scene indicates that the court specifically considered the charge of arson and enhanced Appellant's sentence based thereon. *Cf. Stewart,* 867 A.2d at 593 (trial court specifically indicated that it was sentencing the appellant in the aggravated range because of three (3) counts that were *nolle prossed).* Consequently, we find no abuse of discretion by the learned trial judge.

¶ 11 Based on the foregoing, we affirm the judgment of sentence.

¶ 12 Affirmed.

¶ 13 Judge KLEIN files a Concurring Statement.

Concurring Statement by KLEIN, J.:

¶ 1 While I agree with the majority that Miller's sentence should be affirmed, I would do so on the basis of the well-reasoned opinion of the trial judge, the Honorable Margherita P. Worthington. I believe that the trial judge's reference to the fire set to the victim's home following her death was not a manifest abuse of her discretion for the following two reasons: (1) the sentencing judge's comments regarding the arson were merely stray remarks which played no part in enhancing Miller's sentence; and (2) while there was no conclusive evidence that Miller actually set fire to the victim's residence, it seems that the fire might not have occurred absent the homicide, and thus Miller's act did endanger firemen. Thus, I concur.