**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Michael John Paul MACIAS, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 20, 2009.

Filed March 17, 2009.

Ronald McGlaughlin, State College, for appellant.

Jennifer A. Buck, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

BEFORE: BOWES, SHOGAN and KELLY, JJ.

OPINION BY BOWES, J.:

¶ 1 Michael John Paul Macias challenges the discretionary aspects of the twenty-to-forty-year term of imprisonment that was imposed after he tendered a guilty plea to third degree murder. We affirm.

¶ 2 On March 19, 2006, the body of forty-six-year-old Doug Stenke was discovered in a motel room at the Huntingdon Motor Inn in Smithfield Township. The victim died as a result of multiple rib fractures that punctured his lungs and were inflicted by a heavy metal rod that had been removed from the closet in the motel room. He also suffered blows to the head. Several hours before the body was found, one of Appellant's co-defendants, Joseph Causey, had been arrested for driving under the influence of alcohol. Causey was driving Mr. Stenke's van and had Mr. Stenke's wallet in his rear pocket. Causey, who had been sharing a room with the victim, admitted to participating in the killing and informed police that Appellant and another co-hort, Rebecca Matthews, were also involved in the crime.

¶ 3 Appellant was arrested and after receiving *Miranda* warnings, made inculpatory statements to police. Appellant admitted that he, Causey, and Matthews planned to rob Mr. Stenke, that he and Causey beat Mr. Stenke to death "with fists and feet and a clothes rod which had been ripped down from the closet of the motel room," and that he and his two co-

defendants proceeded to rob the victim of his money, credit cards, car, some drugs, and beer. N.T. Guilty Plea, 5/18/07, at 12. Police discovered Appellant's fingerprints on the rod utilized to inflict the fatal blows to the victim. While in jail, Appellant made telephone calls to a relative and "two other individuals," and during those calls, which were recorded, Appellant "admitted to those persons that he was involved in this crime." *Id.*

¶ 4 On March 20, 2006, Appellant, Causey, and Matthews were charged with first, second, and third degree murder and also with manslaughter, robbery, theft, and conspiracy. On May 18, 2007, Appellant tendered an open guilty plea to the charge of third degree murder and understood that he faced a sentence of twenty-to-forty-years imprisonment and that it was entirely within the sentencing court's discretion to impose such a sentence. *Id.* at 3, 14.

¶ 5 The case proceeded to sentencing on December 21, 2007. The sentencing court had a presentence report; Appellant had no corrections to that document. The court also possessed and considered a psychiatric report prepared on behalf of Appellant by Joseph Silverman. In mitigation, Appellant, who was diagnosed with a syndrome similar to Asperger's syndrome, maintained that Causey instigated the crime and that he was "gullible to suggestion." N.T. Sentencing, 12/21/07, at 7. Appellant also noted that he had a history of being physically abused and institutionalized due to his psychological problems.

¶ 6 The sentencing court elected to sentence Appellant to the statutory maximum sentence, which also was a standard range sentence under the sentencing guidelines, for these reasons:

The Court: [I'm][n]ot going to repeat everything I've said this morning. I have to tell you, Michael, that some of the things you said to the probation officer as part of this report troubled me a great deal and it's not maybe important but I said this morning to Mr. Causey that in my humble opinion—and I find your attorney for the first time in his legal career agreeing with me—that if a jury were to hear all this evidence, I believe that had a jury—a reasonable jury could have found all of you guilty of second-degree murder which carries a mandatory life sentence.

But there's something in your statement, Michael, that I believe could lead a prosecutor to seek a first-degree murder conviction and maybe even the death sentence. You told the officer—and I'm reading what she reported you said—you told her I was the last one to walk out. The dude was trying to get up. I went back and was going to help him but Becky grabbed me. No one could have made it the way he was laying. All of his air was blocked. No one could have breathed. He tried to get up and he'd fall and then she says you said, I didn't think they were as bad as they were and here I am a year later.

That's really frightening, Michael. If as you say you were the last one out of the room and if as you say you appreciated the seriousness of the condition this man was in, your failure to get him help is just unexcusable. And when I think about the three of you back at the Friendly Tavern drinking beer while this man's died in a motel room, it makes in my opinion the imposition of sentence rather easy. You have been given—you and Mr. Causey—a significant break. There will be a day down the road when you'll be a free man. Your victim won't but you will.

But the facts in this case—there was another thing you said, by the way, and I don't know what you meant and I don't

know that there's any evidence to back it up. I suspect sometimes when people are interviewed they tend to make themselves look better to Probation or say things to build themselves up, but you told her that you needed to score in order to buy heroin. And then you stated or she quotes you as saying you stated that you only rob people who owed you money. I am guessing that you didn't mean to use the word rob. I'm thinking maybe you were thinking of theft but I thought that a strange statement.

The sentence of the Court, Michael, is that you undergo imprisonment in a State Correctional facility for a period of not less than 20 or more than 40 years and we'll give you credit for time served on account of this sentence.

*Id.* at 11–13.

¶ 7 This appeal followed the denial of Appellant's motion to modify his sentence. On appeal, Appellant raises various challenges to the discretionary aspects of the sentence imposed. As required by Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), Appellant included in his brief a separate statement of reasons in support of review of the discretionary aspects of the sentence. Appellant's statement must raise a substantial question as to the appropriateness of his sentence in order to permit appellate review.

Where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process, such a statement will be deemed adequate to raise a substantial question so as to permit a grant of allowance of appeal of the discretionary aspects of the sentence.

*Commonwealth v. Ladamus*, 896 A.2d 592, 595 (Pa.Super.2006) (quoting *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617, 627 (2002) (plurality)).

¶ 8 Appellant claims that the sentencing court did not state adequate reasons for its sentence. Appellant also suggests that the court failed to consider both the mitigating factors presented to it and Appellant's rehabilitative needs and instead, it sentenced based exclusively upon the seriousness of the crime. Finally, Appellant claims that the court "impermissibly focused on the fact" that Appellant "somehow got a break in being able to enter a plea to Third Degree Murder." Appellant's brief at 12.

¶ 9 The failure to set forth adequate reasons for the sentence imposed has been held to raise a substantial question. *Commonwealth v. Whitmore*, 860 A.2d 1032 (Pa.Super.2004), *reversed on other grounds*, 590 Pa. 376, 912 A.2d 827 (2006). Likewise, an averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question. *Commonwealth v. Lawrence*, 960 A.2d 473 (Pa.Super.2008); *Commonwealth v. Robinson*, 931 A.2d 15 (Pa.Super.2007) (*en banc*). Finally, an allegation that the court considered an impermissible sentencing factor raises a substantial question. *Commonwealth v. Matroni*, 923 A.2d 444 (Pa.Super.2007). Hence, we will consider the merits of Appellant's sentencing challenges.

¶ 10 Our standard of review of the sentencing court's imposition of a sentence was outlined clearly by our Supreme Court in *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007). Therein, the Court observed that this Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.

C.S. § 9781(c) and (d). Section 9781(c) states (emphasis added):

> (c) Determination on appeal.—The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> **In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.**

¶ 11 Section 9781(d) provides that when we review the record, we must have regard for:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

¶ 12 Since Appellant was sentenced within the guidelines, we may reverse only if application of the guidelines is clearly unreasonable. The *Walls* Court noted that the term "unreasonable," while not defined in the Sentencing Code, generally means a decision that is either irrational or not guided by sound judgment. The Court continued that the context of the term's use in section 9781 indicates that the legislature "intended the concept of unreason-

ableness to be inherently a circumstance-dependent concept that is flexible in understanding and lacking precise definition." *Id.* at 963.

¶ 13 The Supreme Court held that a sentence can be deemed unreasonable after review of the four elements contained in section 9781(d) or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S. § 9721(b). Section 9721(b) states in pertinent part:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing[.]

¶ 14 In conclusion, our Supreme Court in *Walls* stated that when the proper standard of review is utilized, "rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guidelines ranges." *Id.* at 964.

¶ 15 In this case, we first reject Appellant's suggestion that the court did not set forth reasons for its sentence. As the above-quoted transcript from the sentencing proceeding indicates, the court detailed the reasons for the sentence in satisfaction of 42 Pa.C.S. § 9721(b) ("In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.").

¶ 16 We similarly reject Appellant's characterization of those reasons as inade-

quate. The court correctly noted that Appellant inflicted the fatal blows and then failed to aid the victim despite the fact that he knew the victim would die. Appellant then went and drank at a bar while Mr. Stenke slowly suffocated to death. The court correctly observed that this crime would have supported a second or first degree murder conviction and that Appellant avoided imposition of a life sentence by pleading guilty.

■■ ¶ 17 Next, we must reject Appellant's assertion that the sentencing court failed to weigh either the various mitigation evidence placed before it or Appellant's rehabilitative needs. The sentencing court expressly stated that it had read the presentence report, the psychological report submitted by Appellant, and Appellant's letter of apology. Given this posture, we must assume that it considered the factors outlined in section 9721(b). As our Supreme Court eloquently stated in *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12, 18 (1988):

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*See also Matroni, supra.*

¶ 18 In this case, the record conclusively establishes that the court was fully informed of all the mitigating factors at play herein. We presume that the court, which was in possession of those facts, applied them in this case. The sentencing court merely chose not to give the mitigating factors as much weight as Appellant would have liked and decided that the facts did not warrant imposition of a sentence lower than the standard range. We cannot reweigh the sentencing factors and impose our judgment in the place of the sentencing court. *Walls, supra.*

¶ 19 Finally, there is no legal authority to support Appellant's position that it was impermissible for the sentencing court to consider that he already received leniency because he pleaded guilty to third degree murder when the evidence supported a conviction for first or second degree murder. In this respect, we stress that the sentencing court's characterization of the evidence was correct. Appellant, with the intent to rob the victim, inflicted the fatal blows with a metal rod. Aware that the victim would die a painful death, Appellant left and went to a bar. It also was true that Appellant avoided life in prison when he was permitted to tender a guilty plea to third degree murder. There is no reason to prohibit the sentencing court from taking into consideration the facts of the crime and how those facts supported a potentially more serious sentence when the court is weighing whether to impose a standard or mitigated range sentence.

¶ 20 In conclusion, the court did comply with the directives of 42 Pa.C.S. § 9721(b). Thus, we can reverse only if the sentence is clearly unreasonable pursuant to the elements of section 9781(d). In light of the guidelines, findings relied upon by the sentencing court, its consideration of the presentence report, the facts and circumstances of this crime, and Appellant's background, we cannot conclude that this sentence is clearly unreasonable. Hence, we must affirm.

¶ 21 Judgment of sentence affirmed.