J-S77019-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALEO SEH | |
| Appellant | No. 266 EDA 2014 |

Appeal from the Judgment of Sentence December 17, 2013
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0002496-2013,
CP-09-CR-0002499-2013

BEFORE: STABILE, J., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED FEBRUARY 03, 2015**

Appellant Aleo Seh ("Appellant") appeals from the judgments of sentence entered in the Bucks County Court of Common Pleas on October 28, 2013, following his guilty plea and *nolo contendere* convictions for terroristic threats,[1] criminal trespass,[2] simple assault,[3] recklessly

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706.

[2] 18 Pa.C.S. § 3503.

[3] 18 Pa.C.S. § 2701.

endangering another person,[4] harassment,[5] delivery of a controlled substance,[6] conspiracy,[7] and criminal use of a communication facility.[8] After careful review, we affirm in part and vacate in part.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case as follows:

> On October 28, 2013, [Appellant], Aleo Seh, pleaded guilty to Delivery of a Controlled Substance, an ungraded felony, Conspiracy to Deliver a Controlled Substance, an ungraded felony, and Criminal Use of a Communication Facility, a felony of the third degree, based upon his participation in a "controlled buy" of cocaine on June 9, 2012. [Appellant] also pleaded guilty to charges arising out of crimes he committed against his mother, Olivia Saywhah, on March 8, 2013. In that matter, [Appellant] pleaded guilty to Criminal Trespass, a felony of the third degree, Terroristic Threats, a felony of the third degree, Simple Assault by physical menace, a misdemeanor of the second degree and Harassment, a misdemeanor of the third degree. He entered a plea of *nolo contendere* to Recklessly Endangering Another Person, a misdemeanor of the second degree. [Appellant] was sentenced to an aggregate minimum term of incarceration of five years. [Appellant] appealed from the judgment of sentence challenging the discretionary aspects of sentence.

> The following facts served as the basis for the guilty plea in [Appellant's] drug case. On June 9, 2012, a confidential informant contacted [Appellant's] brother, Robert Nuahn, to

---

[4] 18 Pa.C.S. § 2705. Appellant pleaded *nolo contendere* to this charge.

[5] 18 Pa.C.S. § 2709.

[6] 35 P.S. § 780-113(a)(30).

[7] 18 Pa.C.S. § 903.

[8] 18 Pa.C.S. § 7512.

negotiate the purchase of cocaine. Nuahn told the informant to contact [Appellant] and to arrange for the delivery. The informant contacted [Appellant] by telephone as instructed and negotiated the delivery of cocaine. At approximately 1:25 p.m. that same date, [Appellant] arrived at 2701 Veteran Highway, Bristol Township, Bucks County, in a vehicle registered to Nuahn and delivered 1.87 grams of cocaine to the informant.

The following facts served as the basis for the guilty plea in the case involving [Appellant's] mother. Ms. Saywhah had for some time been attempting to exclude [Appellant] from her home located at 42 Ironwood Road, Bristol Township, Bucks County. Prior to the incident on trial, she had changed the locks to her residence numerous times, but [Appellant] kept finding ways to enter her home without her permission, including climbing on the roof to gain access through a window. Prior to March 2, 2013, [Appellant's] mother obtained a temporary Protection From Abuse (PFA) order against [Appellant]. On that date, [Appellant] once again returned to the property. As of that time, the temporary order had not yet been served upon [Appellant]. [Appellant] was, however, aware that the order had been issued. His mother had verbally advised him that she had obtained a court order excluding him from her residence. Ms. Saywhah called the police and two Bristol Township Police Officers responded to her home. When the police arrived, Ms. Saywhah asked that they arrest [Appellant] for violating the temporary PFA order. The officers advised Ms. Saywhah that they could not arrest [Appellant] since the order had not yet been served, but advised her that they would serve the order and direct [Appellant] to leave the premises. The police then entered Ms. Saywhah's residence, served [Appellant] with the temporary PFA order and notice of hearing regarding Ms. Saywhah's request for a final PFA order, and directed him to leave the residence. Officer Mark Titus, one of the officers who responded to the scene on that date, described [Appellant's] response as "not tak[ing] us serious." When police allowed [Appellant] to retrieve his belongings, he got his belongings "one shoe at a time." [Appellant] prolonged the process for so long that the responding police were forced to call for assistance. When [Appellant] finally left the residence after backup arrived, he stood on the edge of the property smiling.

On March 6, 2013, a final PFA order was entered. On March 8, 2013, in violation of that order and while his drug case was pending, [Appellant] again entered his mother's home. At

approximately 9:15 a.m., Ms. Saywhah returned home from work and was confronted by [Appellant]. [Appellant] came down the steps from the second floor of the residence and began cursing at her. He took her phone from her hand and refused to return it. He then poured a brown substance on her clothing and told her he was "going to burn you and the house down." He told her, "You are lucky I don't have a match or I would set you ablaze" and then began searching for something to ignite a fire. When he was unsuccessful, he stood in front of the door and would not allow his mother to leave her home. When police arrived, the officers observed a brown substance that smelled like paint thinner on the front of Ms. Saywhah's shirt and the back of her coat. [Appellant], who had run upstairs and locked himself in a bedroom, refused to open the bedroom door and repeatedly told police, "You are going to have to kick the door in or shoot me through the door." The police forced open the door and took [Appellant] into custody. After he was placed in the back of a patrol vehicle, [Appellant] continued to use vulgar language, screaming at both his mother and police. While being transported to police headquarters, [Appellant] repeatedly threatened the officers, stating "I will kick your a--. You haven't seen the last of me. You don't know who I am or who my friends are. I don't care how long I am sent away for, I will be back for you." [Appellant] continued to threaten officers while at police headquarters.

At the time of sentencing, Ms. Saywhah was 63 years old. [Appellant] was 36 years old. [Appellant's] criminal history is as follows. In 1994, [Appellant] was adjudicated delinquent of Indecent Assault for an incident that occurred on June 16, 1994 in Bucks County. In 1994, [Appellant] was also adjudicated delinquent of Terroristic Threats for an incident that occurred August 2, 1994 in Bucks County. In 1995, he was adjudicated delinquent of Indecent Exposure for an incident that occurred on March 29, 1995 in Bucks County. In 1996, he was convicted of Carrying Weapons without Permission in Minnesota. In 1998, he was convicted of False Reports in Philadelphia. In 2006, he was convicted of Resisting Arrest and Possession of a Controlled Substance in Bucks County. In 2008, [Appellant] was convicted of summary Disorderly Conduct, Defiant Trespass and Excessive Noise. In 2009, [Appellant] was convicted of Defiant Trespass. In April 2014, [Appellant] was convicted on four Disorderly Conduct offenses, two Simple Trespass offenses, Harassment and Criminal Mischief.

- 4 -

The 2009 Defiant Trespass case involved circumstances that were very similar to those involved in the instant case. In that matter, [Appellant] had been issued a non-traffic citation for trespassing into his mother's home and was advised by police not to return to the residence. Despite police intervention, [Appellant] returned to the residence two days later. [Appellant's] Mother called the police to report his presence. When police arrived, [Appellant] was taken into custody. While in police custody, [Appellant] directed profanity at the officers.

On October 28, 2013, [Appellant] was sentenced as follows. On count two of Information number 2499-2013, Delivery of a Controlled Substance, [Appellant] was sentenced to a term of incarceration of one to five years. A consecutive term of incarceration of one to five years was imposed on count one, Conspiracy to Deliver a Controlled Substance. No further penalty was imposed on count three, Criminal Use of a Communication Facility. On Information number 2496-2013, [Appellant] was sentenced to a term of incarceration of 18 months to 36 months on count five, Criminal Trespass, and a consecutive term of incarceration of 18 to 36 months on count four, Terroristic Threats.[22] No further penalty was imposed on counts six, seven and eight, Simple Assault, Recklessly Endangering Another Person and Harassment. The sentences on the two cases were run consecutively to one another for an aggregate minimum sentence of five years.

[22] The [c]ourt [originally] imposed a maximum sentence of seven years [84 months] on each count. On December 17, 2013, the [c]ourt reduced the maximum sentences to 36 months on each count.

On November 6, 2013, [Appellant] filed a motion for reconsideration of sentence. On December 17, 2013, a hearing was held on [Appellant's] motion. At that hearing, the Commonwealth submitted corrected sentencing guidelines. The original guidelines reflected a prior record score of two as a result of the improper inclusion of [Appellant's] juvenile adjudications in calculating the prior record score. The corrected guidelines reflected a prior record score of one. The [c]ourt noted that the standard range of the guidelines for Delivery of a Controlled Substance and Conspiracy to Deliver a controlled Substance as reflected in the original guidelines called for a minimum sentence of 9 to 16 months. The corrected guidelines called for 6 to 14 months. The [c]ourt imposed a minimum

sentence of 12 months. The [c]ourt intended to impose a sentence within the standard range of the sentencing guidelines. Since the sentence imposed fell within the standard range of both the original guidelines and the corrected guidelines, the prior record score error had no impact on the [c]ourt's sentencing decision.

The original guidelines for the Criminal Trespass called for an aggravated sentence of 9 to 12 months. The corrected guidelines called for an aggravated range of 6 to 9 months. The original guidelines for the crime of Terroristic Threats called for 14 to 17 months. The corrected guidelines called for 12 to 15 months. In imposing the original sentence, the [c]ourt imposed sentences of 18 to 84 months on each offense, sentences outside the aggravated ranges of the sentencing guidelines. The corrected guidelines were not significantly different with regard to the top of the aggravated ranges. The Criminal Trespass guidelines differed by three months. The Terroristic Threats guidelines differed by two months. The [c]ourt found that [the] difference did not warrant a modification of the minimum sentence. The [c]ourt did modify the maximum sentence on each count, reducing the original maximum sentences imposed from 84 months to 36 months.

Trial Court Pa.R.A.P. 1925(a) Opinion, April 11, 2014 ("1925(a) Opinion"), pp. 1-6 (some footnotes omitted). Appellant timely appealed the December 17, 2013 sentences. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

A. Did the sentencing court err in imposing a sentence that exceeded the guidelines for a defendant with a prior record score of "1", where the Commonwealth agreed that Appellant's prior record score is "1", but the court sentenced Appellant well outside those guidelines?

B. Did the sentencing court err in ordering that Appellant may only interact with his mother while he is incarcerated and not after he is released, even though Appellant's mother was present

during sentencing to support Appellant and did not request any such order be imposed?

Appellant's Brief, p. 7 (all capitals omitted).

Appellant first claims the trial court erred in sentencing him beyond the standard range of the sentencing guidelines and did not adequately specify reasons for the upward departure. *See* Appellant's Brief, pp. 14-22.

This claim raises a challenge to the discretionary aspects of Appellant's sentence. "Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right." *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super.2011). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Allen*, 24 A.3d at 1064. "The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis." *Commonwealth v. Fiascki*, 886 A.2d 261, 263 (Pa.Super.2005). "Generally, however, in order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the

- 7 -

sentencing process." ***Commonwealth v. Titus***, 816 A.2d 251, 255 (Pa.Super.2003).

Here, Appellant filed a timely notice of appeal, and preserved his issues in a motion for reconsideration of sentence. Further, Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). ***See*** Appellant's Brief, pp. 14-15. Accordingly, we now determine whether Appellant has raised a substantial question for review and, if so, proceed to a discussion of the merits of the claim. Pa.R.A.P. 2119(f); ***Commonwealth v. Tuladziecki***, 522 A.2d 17 (Pa.1987).

In his Pa.R.A.P. 2119(f) statement, Appellant alleges that the trial court imposed an unreasonable sentence because (1) it sentenced him in the aggravated range of the sentencing guidelines without providing adequate reasons for the upward departure,[9] and (2) it decided to run certain sentences consecutive to one another. ***See*** Appellant's Brief, pp. 14-15.

Initially, we note that Appellant's claim that his sentence is unreasonable because the trial court decided to run certain portions of it consecutive to one another does not raise a substantial question for our review. ***See Commonwealth v. Marts***, 889 A.2d 608, 612

---

[9] Appellant concedes the trial court employed the correct sentencing guidelines at the December 17, 2013 resentencing. ***See*** Appellant's Brief, p. 18.

- 8 -

(Pa.Super.2005) (a claim that the consecutive nature of sentences violates the Sentencing Code fails to raise a substantial question for review).

Appellant additionally alleges the trial court did not provide adequate reasons for sentencing him beyond the standard guidelines range. "In every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence." ***Commonwealth v. Curran***, 932 A.2d 103, 106 (Pa.Super.2007) (citing 42 Pa.C.S. § 9721). A claim that the sentencing court did not sufficiently state its reasons for the sentence raises a substantial question. ***Commonwealth v. Twitty***, 876 A.2d 433, 439 (Pa.Super.2005); ***see also Commonwealth v. Macias***, 968 A.2d 773, 776 (Pa.Super.2009) ("The failure to set forth adequate reasons for the sentence imposed has been held to raise a substantial question."); ***Commonwealth v. Reynolds***, 835 A.2d 720, 734 (Pa.Super.2003) (an allegation that a judge failed to offer specific reasons for a sentence raises a substantial question).

Based on this authority, we conclude that Appellant raises a substantial question for review because he asserts that the trial court did not adequately place reasons on the record as to why it imposed the sentence it did. We will therefore address the merits of Appellant's discretionary aspects of sentencing claim.

Where this Court reviews the sentence, we apply the following standard of review:

> [S]entencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

*Commonwealth v. Malovich*, 903 A.2d 1247, 1252-53 (Pa.Super.2006) (citations omitted). "[T]his Court's review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. § 9781(c) and (d)." *Macias*, 968 A.2d at 776-777.

> Section 9781(c) of the Sentencing Code provides:
>
> **(c) Determination on appeal.--**The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:
>
>> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>>
>> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>>
>> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.
>
> **In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.**

42 Pa.C.S. § 9781(c) (emphasis provided).

> Section 9781(d) of the Sentencing Code provides that when this Court reviews the record on appeal, we must have regard for:
>
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

As to the function of the Sentencing Guidelines, this Court has noted:

> When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it [is] not bound by the Sentencing Guidelines. *Commonwealth v. Yuhasz*, 592 Pa. 120, 923 A.2d 1111, 1118 (2007) ("It is well established that the Sentencing Guidelines are purely advisory in nature."); *Commonwealth v. Walls*, [592 Pa. 557, 570,] 926 A.2d 957, 965 (referring to the Sentencing Guidelines as "advisory guideposts" which "recommend ... rather than require a particular sentence"). The court may deviate from the recommended guidelines; they are "merely one factor among many that the court must consider in imposing a sentence." *Yuhasz*, 923 A.2d at 1118. A court may depart from the guidelines "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa.Super.2001). When a court chooses to depart from the guidelines however, it must "demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines." *Eby*, 784 A.2d at 206. Further, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S.[] § 9721(b).

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa.Super.2008). "[A] court can satisfy the requirement to prepare a contemporaneous written statement of reasons for deviating from the sentencing guidelines by stating

- 11 -

those reasons on the record in the presence of the defendant." ***Commonwealth v. Jones***, 942 A.2d 903, 908 (Pa.Super.2008).

When a sentence is outside the guidelines, therefore, our review centers upon whether the sentence was unreasonable. 42 Pa.C.S. § 9781(c)(3). A sentence may be determined unreasonable after review of the four elements contained in Section 9781(d) of the Sentencing Code or if the sentencing court failed to consider the factors outlined in Section 9721(b) of the Sentencing Code.[10] ***Macias***, 968 A.2d at 777 (*quoting* ***Walls***, 926 A.2d at 963-964). "[W]hen the proper standard of review is utilized, 'rejection of a sentencing court's imposition of sentence on unreasonableness grounds [should] occur infrequently, whether the sentence is above or below the guidelines ranges.'" ***Macias***, 968 A.2d at 777 (*quoting* ***Walls***, 926 A.2d at 964).

---

[10] Section 9721(b) of the Sentencing Code provides, in pertinent part:

> **(b) General standards.--**In selecting from the alternatives set forth in subsection (a), the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing and taking effect under section 2155[.]

42 Pa.C.S. § 9721(b).

Our review of the sentencing transcript reveals that the lower court did not abuse its discretion. Instead, the trial court imposed a sentence that was consistent with the protection of the public, took into account the gravity of the offense as it related to the impact on the life of the victim and on the community, and considered Appellant's rehabilitative needs, as required by 42 Pa.C.S. § 9721(b).

The record in this case reveals that the trial court properly considered all relevant sentencing factors in fashioning Appellant's sentence outside of the aggravated range of the sentencing guidelines. Specifically, the trial court considered the sentencing guidelines, the nature and circumstances of the offenses, Appellant's background, character, and rehabilitative needs, the protection of the public and the impact of the crimes, and the testimony of various Commonwealth and defense witnesses at sentencing. *See* N.T. 10/28/2013, N.T. 12/17/2013.

At sentencing following Appellant's motion for reconsideration, the trial court explained the sentences imposed as follows:

> **THE COURT:** All right. I have reviewed the sentencing guidelines that were submitted to me at the time of the original sentencing. I have reviewed the new sentencing guidelines that were submitted to me with the corrected prior record score. I reviewed my notes of the facts that were presented at the time of the sentencing. I have reviewed -- I obviously have considered the facts that were admitted here today.
>
> I want to be clear on what has actually changed in terms of the sentencing guidelines.
>
> Let's start with the possession with intent to deliver case, 2449 [sic] of 2013. The sentencing guidelines as they currently

- 13 -

read with [a] prior record score of one call for a standard range of six to 14 for both possession with intent to deliver and criminal conspiracy.

The sentence imposed by the [c]ourt of one to five is within the standard range of those sentencing guidelines, so nothing has changed in terms of the sentence the [c]ourt imposed.

Nothing -- the fact that the guidelines have shifted haven't changed the standard range that was imposed.

The case of 2496 of 2013, the criminal trespass did call for -- with a prior record score of two -- restorative sanctions to nine months in the standard range. It now calls for restorative sanctions to six months in the standard range.

With a prior record score of two it called for [an] aggravated sentence of nine to 12. It now calls for [an] aggravated sentence with [a] prior record score of one of six to nine.

I notice -- I note that the sentence of the [c]ourt was outside the sentencing guidelines when it was a prior record score of two and, therefore, would be outside of the sentencing guidelines with the corrected prior record score.

The crime of terroristic threats with a prior record score of two called for a standard sentence of three to 14 months with an aggravated sentence of 14 to 17 months. The sentence of the [c]ourt exceeded those -- that sentencing guidelines range.

The sentencing guidelines now call with [a] prior record score of one for a standard range of one to 12 and [an] aggravated change [sic] range of 12 to 15. There is not a significant difference in the sentencing guidelines with a prior record score of two versus a prior record score of one.

In any case, the sentence imposed by the [c]ourt in both -- even when it was a prior record score of two, the [c]ourt felt it was important and necessary to exceed the guidelines based on the fact that this individual has been involved in violent and dangerous offenses since 1994. He has continued in his criminal conduct despite the repeated intervention of law enforcement. He has demonstrated his unwillingness to abide by the dictates of the law regarding his presence on other people's property.

- 14 -

He has specifically victimized this particular individual before. It is supposed to be somebody he loves and cherishes, but he has continued and, in my opinion, will continue to victimize her in the future.

I find that he is a danger to the community and I find that he will continue to engage in criminal offenses. It is necessary to incarcerate him for an extended period of time to protect his mother and to protect the community, and it is necessary to incarcerate him for an extended period of time because he will continue to reoffend as his criminal record going back to 1994 demonstrates.

So based on that on case [sic] -- and I incorporate all my reasons as stated on the record at the time of the initial sentencing.[11] In case 2449 [sic] of 2013, on the count of possession with intent to deliver, [Appellant] is sentenced to pay the cost of prosecution and shall undergo imprisonment for one to five years. On [conspiracy to commit] possession with intent to deliver, one to five years. On the conspiracy to deliver, those sentences shall run consecutive to one another and not concurrent.

On case 2496 of 2013, a felony committed while he was pending sentence on the drug felony, I also find another aggravating circumstance. On the count of criminal trespass, I am sentencing outside the sentencing guidelines.

I have stated the reasons that I believe this case calls for a sentence outside the aggravated range of the guidelines given his criminal record, the fact that he was already pending sentence as a drug dealer when he committed these crimes against his mother, the fact that he has continued to repeatedly engage in the same criminal conduct of defiant trespass and all of the other reasons he is sentenced on the count of criminal trespass to 18 to 36 months.

---

[11] The aggravating factors noted by the court at the original sentencing conducted on October 28, 2013 included Appellant's extensive criminal record, the specific torturous nature of the physical harm with which he threatened his mother, the fact that his felonious behavior against his mother occurred while he was also charged with drug felonies, and his complete lack of remorse. *See* N.T. 10/28/2013, pp. 68-76.

On the crime of terroristic threats he is sentenced to a sentence of 18 to 36 months. Those sentences shall all run consecutive to one another and not concurrently.

N.T. 12/17/2013, pp. 17-22.

While it is evident that Appellant's sentence exceeded the guideline ranges, we reiterate that the sentencing guidelines are but one, albeit important, factor when determining an individualized sentence. **See Sheller**, **supra**. Proper appellate review dictates this Court not disturb a trial court's sentence absent a finding that the trial court failed to weigh the sentencing considerations in a meaningful fashion. When reviewing sentencing matters, "[w]e must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." **Commonwealth v. Miller**, 965 A.2d 276, 277 (Pa.Super.2009) (citation omitted). Clearly, the trial court acted within its discretion. Accordingly, Appellant's discretionary aspects of sentencing claim fails.

In his second claim, Appellant alleges the trial court improperly directed him to stay away from his mother as a part of his sentence because the trial court lacked authority to enter such a condition. **See** Appellant's Brief, pp. 23-24. This claim raises a question as to the legality of the sentence, which is a question of law over which we exercise *de novo* plenary review. **See Commonwealth v. Hawkins**, 45 A.3d 1123, 1130 (Pa.Super.2012).

Our Legislature has vested exclusive authority in the Pennsylvania Board of Probation and Parole ("Board") over parole determinations for prisoners sentenced to a maximum term of two years or more. 61 Pa.C.S. § 6132. The relevant statute provides, in pertinent part:

**§ 6134. Sentencing court to transmit records to board**

**(b) Recommendations from judge.--**

(1) A judge may make at any time a recommendation to the board respecting the person sentenced and the term of imprisonment the judge believes that person should be required to serve before a parole is granted to that person.

(2) *A recommendation made by a judge under paragraph (1) respecting the parole or terms of parole of a person shall be advisory only*. No order in respect to the recommendation made or attempted to be made as a part of a sentence shall be binding upon the board in performing the duties and functions conferred on it by this chapter.

61 Pa.C.S. § 6134 (emphasis provided). Accordingly, a sentencing court may make a recommendation to the Board at any time regarding a prisoner's parole date or the terms of parole. *See* 61 Pa.C.S. § 6134(b). However, such recommendations are merely advisory. *See id.*

The trial court acknowledged that Appellant correctly challenged the portion of his sentence that directed him to stay away from his mother, but noted that the condition was merely advisory. *See* 1925(a) Opinion, p. 7. The court noted:

On appeal, [Appellant] correctly challenges that portion of the sentence imposed on Information number 2496-2013 directing that he have no contact with his mother upon his release from incarceration. The Pennsylvania Board of Probation

- 17 -

and Parole has exclusive authority to determine parole when the offender is sentenced to a maximum term of imprisonment of two or more years. 61 Pa.C.S. § 6132. A judge may make a recommendation to the board. However, "[a] recommendation made by a judge respecting the parole or terms of parole of a person shall be advisory only. No order in respect to the recommendation made or attempted to be made as a part of a sentence shall be binding upon the board in performing the duties and functions conferred upon it." 61 Pa.C.S. § 6134(b)(2). Therefore, any condition this [c]ourt purported to impose on [Appellant] is advisory only.

1925(a) Opinion, pp. 6-7. The Commonwealth agrees that the trial court improperly imposed the stay-away condition on Appellant, but suggests that remand for sentencing is unnecessary because the condition did not affect Appellant's aggregate sentence. **See** Commonwealth's Brief, pp. 17-18.

We agree that the trial court lacked authority to impose the condition that Appellant stay away from his mother while on parole as part of his sentence, and we vacate this condition of his sentence. **See** 42 Pa.C.S. § 706 ("An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review[.]"). Remand is unnecessary, however, as our correction of the sentence does not alter the trial court's sentencing structure. **See Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa.Super.2006) (explaining that, if Superior Court decision does not alter the overall sentencing scheme, remand is not required).

Sentence condition that Appellant must stay away from his mother while on parole vacated. Judgment of sentence affirmed in all other respects.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/3/2015