J-A09043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
CHAD KENOWSKI CLARK :
:
Appellant : No. 1062 MDA 2022

Appeal from the Judgment of Sentence Entered June 29, 2022,
in the Court of Common Pleas of Lackawanna County,
Criminal Division at No(s): CP-35-CR-0002676-2018.

BEFORE: PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: JULY 26, 2023**

Chad Kenowski Clark appeals from the judgment of sentence imposed

after he pleaded guilty to third-degree murder and arson with intent to collect

insurance funds. Upon review, we affirm.

The trial court detailed the facts as follows:

On June 25, 2018, Scranton Fire and Police Departments
responded to 52 Roosevelt Street in Scranton, Pennsylvania,
following reports of a structure fire. When first responders
arrived, they observed heavy fire coming from the home's garage,
and performed a primary search of the residence. Despite initial
reports that the home was vacant, responders discovered a
deceased black male, later identified as Brett Sweeting[,] Jr., as
well as a propane tank located next to a minivan parked in the
garage.

Once the fire was extinguished, the City Fire Inspector conducted
an investigation which determined that the fire was set with an
open flame, was "incendiary in nature" and that the case was one
of [a]rson. Additionally, Dr. Gary Ross, a forensic pathologist,
performed an autopsy on [Brett Sweeting, Jr.] and determined

that his cause of death was thermal burns and carbon monoxide poisoning; the manner of death was determined to be homicide. Dr. Ross found it noteworthy that, at the time of his death, the victim was in possession of house keys to the residence located at 52 Roosevelt Street.

A subsequent police investigation revealed that the home located at 52 Roosevelt Street belonged to [Clark]; however, the residence was under contract to be sold at the time of the fire. Scranton police discovered that [Clark] had attempted to sell the home numerous times over the past few years and that he promptly filed an insurance claim for the June 26th fire loss at his first opportunity to do so. The investigation additionally unearthed that [Clark] and [Sweeting, Jr.] had been friends. Said friendship was confirmed by his family, when they relayed to the police that the pair met at [Clark's] yoga studio and that [Sweeting, Jr.] the victim looked up to [Clark] as a mentor.

Ultimately, Scranton police obtained a search warrant for [Sweeting, Jr.'s] phone records and discovered that he had made and received several telephone calls to his father, Brett Sweeting[,] Sr., on the night of the [a]rson. The call logs confirmed that, on the night of June 26, 2018, [Sweeting, Jr.] drove to his father's residence in Williamsport, Pennsylvania; said logs further confirmed that both individuals then traveled back to Scranton and were present at 52 Roosevelt Street on the night of the [a]rson. During his police interview, [Sweeting, Sr.] indicated that [his son] told him about a "dude" that wanted him to burn his house down for insurance money. Police opined that [Sweeting Sr.] acted as the lookout for [his son] while he committed the [a]rson and that the "dude" that wanted [Sweeting, Jr.] to burn his house down was [Clark]. Ultimately, [Sweeting, Sr.] was charged with [m]urder in the [second degree] and other related charges.

Police later had a confidential informant ["CI"] reach out to [Clark], who eventually admitted that he and the victim agreed to burning [Clark's] house down for the insurance money. During their recorded conversation, [Clark] relayed to the CI that he needed money for his family and that his intention was that, since [Sweeting, Jr.] as now deceased, [his] family could sue his insurance company after [the] claim was settled. Ultimately, the CI pressed [Clark] for [Sweeting, Jr.'s] share of the insurance money and the two agreed that [Clark] would give the aforementioned to the CI and the CI would then give the insurance

- 2 -

proceeds to [Sweeting, Jr.'s] family under the guise that he/she had won it at a casino. During that same conversation, [Clark] also informed the CI that he had an upcoming interview with his insurance company and that he intended to make it seem as though the fire was the result of a faulty automobile issue.

Trial Court Opinion, 9/16/22, at 1-4 (citations omitted). Following the investigation, the Scranton police arrested Clark and charged him with multiple offenses.

Ultimately, on April 8, 2022, Clark pled guilty to murder in the third degree and arson with intent to collect insurance, both as an accomplice.[1] On June 29, 2022, the trial court sentenced Clark to 10 to 20 years' incarceration for murder and 1 to 2 years' incarceration for arson to run consecutively. Clark filed a post-sentence motion which the court denied.

Clark filed this timely appeal. Clark and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Clark raises a single issue:

1. Whether the trial court abused its discretion by consider[ing] the nature and gravity of the offense, but failing to give consideration or proper consideration to [Clark's] character and background and then imposing a manifestly unreasonable and excessive sentence in violation of the Sentencing Code and applicable case law?

Clark's Brief at 3.

Clark challenges the discretionary aspects of his sentence. "It is well settled that, with regard to the discretionary aspects of sentencing, there is

---

[1] 18 Pa.C.S.A. §§ 2502(c) and 3301(c)(3).

- 3 -

no automatic right to appeal." ***Commonwealth v. Austin***, 66 A.3d 798, 807-08 (Pa. Super. 2013) (citation omitted). This Court has explained that, to reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis of the following factors:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Colon***, 102 A.3d 1033, 1042–43 (Pa. Super. 2014) (quoting ***Austin***, 66 A.3d at 808).

Here, Clark satisfied the first three requirements under ***Colon***. Accordingly, we must determine whether Clark raised a substantial question.

In his 2119(f) statement, Clark claims that the trial court imposed a manifestly unreasonable and excessive sentence. Specifically, Clark argues that the court focused on the nature and circumstances of the crime itself without considering his history and background, character, and various mitigating factors. Clark's Brief at 12.

This Court has held that sentencing an offender solely based upon the serious nature of the criminal act, and not all relevant factors, presents a substantial question for appellate review purposes. ***Commonwealth v. Macias***, 968 A.2d 773, 776 (Pa. Super. 2009). Additionally, a claim that a

sentence is excessive, in conjunction with an assertion that the trial court failed to consider mitigating factors, presents a substantial question. ***Commonwealth v. Caldwell***, 117 A.3d 763, 769-70 (Pa. Super. 2015) (en banc).  We therefore will consider the merits of Clark's sentencing claim.

In the argument section of his brief, Clark specifically argues that the presentence investigation report ("PSI") submitted to the trial court was "devoid of much information" and did not adequately detail many important and relevant factors about Clark's history, background, character and other mitigating factors.[2]  According to Clark, these included Clark's family and educational background, home, neighborhood, military history, employment, and employment abilities and accomplishments, and interests.  Thus, because the trial court based its sentence on an insufficient PSI, Clark maintains that the trial court abused its discretion and improperly sentenced Clark.  Clark's Brief at 20-24.  We disagree.

Our standard of review of a sentencing claim is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the

---

[2] We observe that in the argument section of his brief, Clark additionally argues that the trial court predetermined his sentence and that his sentence was excessive because it effectively constituted a life sentence and Brett Sweeting, Sr. received a much lesser sentence than he did.  Clark's Brief at 25-28.  However, these arguments were not raised in Clark's Rule 2119(f) statement.  Even if Clark included them in this statement, he did not raise these arguments with the trial court and as such, he waived them.  Therefore, we will not address these arguments.

sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006).

To assist with the sentencing of a defendant, Pennsylvania Rule of Criminal Procedure 702 provides that the sentencing judge may, in the judge's discretion, order a PSI. Notably, the PSI must include information "regarding the circumstances of the offense and the character of the defendant sufficient to assist the judge in determining sentence." Pa.R.Crim.P. 702. In the absence of a PSI, the trial court must "conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of . . . the defendant's personal history and background." ***See Goggins***, 748 A.2d 721, 728 (Pa. Super. 2022). "The essential inquiry" is not whether the court obtained a pre-sentence investigation report, but "whether the sentencing court was apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it." ***Commonwealth v. Finnecy***, 135 A.3d 1028, 1032 (Pa. Super. 2016) (citation omitted). Sufficient information must be substituted for a PSI, so that the court can make a fully informed sentencing decision. ***See Commonwealth v. Flowers***, 950 A.2d 330, 333 (Pa. Super. 2008).

Here, Clark alleges that the PSI that was presented to the trial court was incomplete and inaccurate. Even if it was, the record reveals that the trial court had sufficient information from other sources to make a fully informed, individualized sentencing decision regarding Clark.

In addition to the PSI, the trial court considered a sentencing memorandum from Clark. At the sentencing hearing, Clark's counsel informed the court that the PSI did not contain certain information about Clark and specifically asked the court to rely on Clark's memorandum for this information instead of the PSI. Notably, the trial court observed that counsel's memorandum was one of the most comprehensive it had seen, indicating that the court reviewed it and was cognizant of its contents. Additionally, Clark gave the trial court numerous letters of support from family, friends, and business associates, from the area and across the country. The court indicated that it considered these letters. The court also heard from Clark himself who expressed remorse and accepted responsibility for the victim's death. N.T., 6/29/22, 9-10, 13-14,

From all this information, the trial court discerned and expressly acknowledged that the incident at issue was an aberration from Clark's life accomplishments and past behavior. *Id.* at 14. However, the court pointed out that someone lost his life because of Clark's conduct, and that fact also had to be considered in sentencing Clark. The court further noted that Clark pled guilty to two charges and opined that the arson to collect insurance funds was the motivation behind the crime. *Id.* at 14-15. Consequently, the trial court imposed an 11 to 22-year aggregate sentence, with both sentences being in the standard range.

Based upon our review of this case, and the sentencing transcript, it is evident that the trial court considered Clark's history, background, character

and other mitigating factors; it had the facts necessary to sentence Clark despite the inadequacy of the PSI. The court considered the two criminal acts and considered all other relevant factors. On appeal, "[w]e cannot re-weigh the sentencing factors and impose our judgment in place of the sentencing court." **Macias**, 968 A.2d at 778. Additionally, a defendant convicted of multiple offenses is not entitled to a "volume discount." **See Commonwealth v. Hoag**, 665 A.2d 1212, 1214 (Pa. 1995). Therefore, conclude that the trial court did not commit a manifest abuse of discretion when it sentenced Clark.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2023