J-S74005-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRE TAYLOR | : | |
| | : | |
| Appellant | : | No. 3478 EDA 2016 |

Appeal from the Judgment of Sentence October 28, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010995-2014, CP-51-CR-0011330-2014

BEFORE:    BOWES, J., LAZARUS, J. AND RANSOM, J.

MEMORANDUM BY BOWES, J.:        **FILED APRIL 30, 2018**

Andre Taylor appeals from the aggregate judgment of sentence of fifty to one-hundred years of incarceration imposed by the trial court after he entered an open guilty plea to two counts each of aggravated assault, robbery, unlawful restraint, and possessing the instruments of a crime ("PIC").  We affirm.

The trial court summarized the facts underlying Appellant's convictions as follows.

> On July 27, 2014, Ms. Kathleen York was walking on the forty-five hundred block of Larchwood Street in Philadelphia when [Appellant] approached her from behind.  [Appellant] grabbed Ms. York and pulled her into an alley, choking her with her headphones and a thin nylon rope.  [Appellant] then robbed her of seven dollars, all that Ms. York had on her person and then ran away.  Three days later, in the middle of the day, Corrine McDonald was walking on the forty-five hundred block of Larchwood Street when [Appellant] approached her and placed a rope around her neck,

strangling her while attempting to take her necklace. Police officers observed this incident and arrested [Appellant]. . . .

Trial Court Opinion, 2/3/17, at 2 (citations omitted).

As a result, Appellant was charged with the above-listed offenses, to which he pled guilty on December 28, 2015. As a repeat felon who had previously been convicted of robbing and strangling four other women, Appellant was subject to a twenty-five-year mandatory minimum sentence.[1] Sentencing was deferred pending a pre-sentence investigation.

The sentencing hearing took place on October 28, 2016. After considering the arguments of counsel, a pre-sentence investigation report, a neuropsychological evaluation obtained by the defense, copies of Appellant's journal from a prior incarceration, and Appellant's allocution, the trial court imposed consecutive, statutory maximum sentences for all counts: ten to twenty years of incarceration for each of the aggravated assault and the robbery convictions, and two and one-half to five years of incarceration for each of the unlawful restraint and PIC convictions.

Appellant's timely-filed post-sentence motion was denied without a hearing by order of November 7, 2016. Appellant timely filed a notice of

---

[1] 42 Pa.C.S. § 9714(a)(2) ("Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary.").

appeal to this Court, and both Appellant and the trial court complied with

Pa.R.A.P. 1925. Appellant presents the following issue for this Court's review.

> Did not the lower court impose a manifestly excessive and unreasonable sentence of 50 to 100 years confinement, which was contrary to the fundamental norms that underlie the sentencing process and to specific provisions of the Sentencing Code including 42 Pa.C.S. §9721(b) which requires in part that a sentencing court consider [A]ppellant's background and rehabilitative needs?

Appellant's brief at 3.

> Appellant challenges the discretionary aspects of his sentence.[2]

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

>> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

---

[2] Generally, a guilty plea constitutes waiver of all defects and defenses except challenges to the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea. ***Commonwealth v. Morrison***, 173 A.3d 286, 290 (Pa.Super. 2017). However, when the plea does not include an agreement as to the sentence to be imposed, the "guilty plea does not bar a discretionary sentencing challenge[.]" ***Commonwealth v. Hill***, 66 A.3d 359, 363 (Pa.Super. 2013).

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (some citations omitted).

Here, Appellant filed a notice of appeal after preserving his issues by including them in a motion to modify sentence and his Pa.R.A.P. 1925(b) statement. Further, Appellant's brief contains a statement pursuant to Pa.R.A.P. 2119(f), wherein he claims that (1) the trial court's imposition of "only consecutive sentences" resulted in a "manifestly excessive total sentence of 50 to 100 years" that is "disproportionate, unreasonable and unduly harsh[,]" and (2) the trial court focused solely on the protection of the public while failing to consider Appellant's rehabilitative needs. Appellant's brief at 13, 14-15.

A claim that the trial court failed to consider Appellant's rehabilitative needs does not raise a substantial question.[3] ***See***, ***e.g.***, ***Commonwealth v. Griffin***, 65 A.3d 932, 936-37 (Pa.Super. 2013) (collecting cases); ***Commonwealth v. Lawson***, 650 A.2d 876, 881 (Pa.Super. 1994) (holding substantial question was not presented by claim that trial court ignored the appellant's rehabilitative needs). Nor does a bald claim that a sentence is

---

[3] Further, because the trial court had the benefit of a presentence investigation report, it is presumed that it considered the relevant mitigating factors. ***Commonwealth v. Boyer***, 856 A.2d 149, 154 (Pa.Super. 2004) ("[W]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.").

excessive based upon the imposition of consecutive sentences raise a substantial question. **Commonwealth v. Dodge,** 77 A.3d 1263, 1270 (Pa.Super. 2013). However, this Court has found that a substantial question was presented by an excessiveness claim combined with allegations that the trial court failed to consider mitigating factors. **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa.Super. 2014) (citing **Commonwealth v. Perry**, 883 A.2d 599, 602 (Pa.Super. 2005)).

Accordingly, we proceed to review the merits of Appellant's claim, mindful of the following standard of review.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> . . . .
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

**Commonwealth v. Antidormi**, 84 A.3d 736, 760-61 (Pa.Super. 2014) (internal citations and quotation marks omitted).

Appellant acknowledges that, as a repeat offender with prior convictions for similar violent crimes, he was subject to a mandatory minimum sentence

- 5 -

of 25 years of imprisonment. Appellant's brief at 16. However, he maintains that a sentence twice the required length is excessive. Primarily, Appellant points to his "horrendous upbringing, where he suffered physical and emotional abuse at the hands of his mother[,]" as well has his diagnosed brain damage and mental illnesses of bipolar disorder and post traumatic stress disorder. *Id*. He contends that he is "a man with serious mental health issues who needs years of intensive mental health treatment, rather than a hardened criminal beyond rehabilitation." *Id*. at 20. Appellant further notes that he accepted responsibility by pleading guilty and apologizing to the victims. *Id*. at 21. Accordingly, Appellant contends that he should have been given the minimum sentence possible of 25 years.

The Commonwealth responds to Appellant's request for leniency by pointing to the fact that Appellant "availed himself of previous probationary sentences and similar leniency by the sentencing court to forge a career as the Spruce Hill strangler." Commonwealth's brief at 10. It also notes that Appellant will have access to mental health treatment offered by the Department of Corrections. *Id*. The Commonwealth maintains that the trial court reasonably imposed a sentence "that will sufficiently incapacitate [Appellant] from strangling other women and young girls, while simultaneously affording him access to individualized mental health treatment." *Id*. at 11.

The transcript reveals that the trial court stated, after hearing from the parties and prior to issuing its sentence, that it carefully reviewed the entire record of the case, pre-sentence reports from the instant and past cases, the neuropsychological report submitted by defense counsel, Appellant's mental health evaluation and prior record score, the sentencing guidelines, and the statutory sentencing factors. N.T., 10/28/16, at 30. Hence, Appellant's contention that the trial court failed to consider relevant factors is unpersuasive. *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009) ("The sentencing court expressly stated that it had read the presentence report, the psychological report submitted by [Macias], and [Macias's] letter of apology. Given this posture, we must assume that it considered the [statutory] factors[.]").

Rather, the record reflects that, upon thorough examination of the specific facts before it, the trial court determined that the mitigating factors were greatly outweighed by the need to protect the public from Appellant. The court offered the following explanation in its opinion.

> [O]n March 24, 2001[,] [Appellant] was arrested for the strangulation and robbery Ms. Voshi Thomas at Thirty-Ninth and Spruce Streets in Philadelphia, choking Ms. Thomas until she passed out, then dragging her to a dumpster and leaving her for dead in the freezing snow. It was the work of a Good Samaritan who came to Ms. Thomas' rescue after hearing her agonizing cries. [Appellant] was convicted of aggravated assault and robbery after a bench trial and sentenced to six to twelve years' incarceration to be followed by five years of probation. [Appellant] had also been arrested on April 10, 2002, and again on June 25, 2002, for the strangulation and robbery of Tianna Woodson and Olivia

Grant. Those three cases were consolidated and [Appellant] received an aggregate concurrent sentence of six to twelve years' incarceration. [Appellant] was never granted parole, serving the maximum on those sentences at S.C.I. Albion.

While serving his state sentence, [Appellant] kept a journal[.] A more disturbing document would be hard to imagine. Ted Bundy, Jeffrey Dahmer and John Wayne Gacy would be proud. The journal lists the names, addresses, dates of birth and social security numbers of each of his victims, their family members and any witnesses in the cases for which he was incarcerated. He describes each crime, including "what I was wearing," how each victim was clad and specific details of what he did to each victim, such as choked her, draged [sic] her, took $200.00 out of her pocket, pulled hair out." [Appellant] also has a list titled "Weapons used in crime's!!" in which he lists the following: "Gun; knife; strap Belt; Rope; Ace bandage; Candy; Bone's; Plastic bag; Food; Tree stick's small ones; Gloves Black, rubber; Rocks." [Appellant] then has a to-do list for when he got out of prison - to go to Shaw Middle School, obtain the graduation books as well as pore over the school computer to find literally hundreds of young girls. [Appellant's] next to-do list:

> "Do This When Home!! [sic] And Always Remember Finish What Ever I Start! Make Sure The Girl Is Not Breathing And Is Dead!
>
> I'm Going To Do One Of These Four Things?
>
> 1. Watch her choke on something until death, or Just Dead. [sic]
>
> 2. Strangle her with a Night Stick, Until dead.
>
> 3. Put my arm around her neck until she goes to sleep, then I'm going to tie a Rope or Cord around her neck while her feet is [sic] in a chair, than [sic] I'm going to slap her until she wakes up and as soon as she does I'm going to kick the chair from under her feet and watch her gag and cough until she's dead and I'm going to watch her kick her feet as well.

4. Just choke her with my hand squeezing her throat, or buy [sic] taping [sic] a cord or rope around her neck strangling her and seeing her gag and tell me I can't Breathe. [sic]"

. . . .

This journal is absolutely terrifying. [Appellant] describes how he has choked dozens of girls, how he regrets that he did not kill them, lists hundreds of new potential victims and vows to make sure he does not make the same mistake again - leaving them alive. [Appellant] writes that he will make sure that the next victims are dead. [Appellant] was released from prison to a half-way house on April 14, 2014, and by July 30th, three and one-half months later, [Appellant] had already attempted to strangle and rob two women walking down the street.

[Defense] counsel presented a neuropsychology report on behalf of [Appellant] showing organic damage suffered by [Appellant] attributed to fetal alcohol syndrome and various physical, mental and emotional abuse as a child. As noted by counsel, this is not something that can be helped with drugs but needs behavior modification, and counsel recommended that the defendant be sentenced to S.C.I. Waymart so that he could get behavior modification at [Alcoholics Anonymous (AA)]. . . . It is after that recommended rehabilitation that [Appellant] contends he should be released back into our community.

To say that [Appellant] is a danger to the community is a stupendous understatement. By [Appellant's] own words he has strangled at least eight young women, for no reason other than his own perverted gratification. Within three and a half months of serving twelve years' incarceration for strangling and robbing four girls, he strangles and robs at least two more young women. He tells us in his journal how he wants to strangle women in an almost orgasmic euphoria. [Appellant] is a danger to the community, who has shown there is no rehabilitation and if released would unquestionably return to his goals of strangling, and this time killing young women in our society. Behavior modification at AA would be monumentally insufficient to rehabilitate this defendant. [Appellant] should never be released from prison.

Trial Court Opinion, 2/3/17, at 7-11 (citations omitted).

Upon this record, we cannot conclude that, in imposing the statutory maximum sentence, "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Zirkle***, 107 A.3d 127, 132 (Pa.Super. 2014). ***Accord Macias***, 968 A.2d at 775 (holding there was no abuse of discretion where the sentencing court was aware of mitigating factors but imposed the statutory maximum sentence following Macias's guilty plea to third-degree murder because it was "troubled . . . a great deal" by the fact that Macias "inflicted the fatal blows and then failed to aid the victim despite the fact that he knew the victim would die" and "then went and drank at a bar while [the victim] slowly suffocated").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 4/30/18