J-S15041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JEREMY MATTHEW HETRICK, | : | |
| | : | |
| Appellee | : | No. 1202 MDA 2013 |

Appeal from the Judgment of Sentence January 30, 2013
In the Court of Common Pleas of Lebanon County
Criminal Division No(s).: CP-38-CR-0000855-2012

BEFORE: BOWES, OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY BOWES, J.:　　　　　　**FILED SEPTEMBER 24, 2014**

This appeal by the Commonwealth is from the discretionary aspects of a sentence imposed upon Appellee, Jeremy Matthew Hetrick.  We affirm.

Appellee was charged with various offenses in connection with the following events, which we have gleaned from the affidavit of probable cause.  At approximately 10:00 p.m. on May 15, 2011, Appellee's then-sixteen-year-old daughter, hereinafter the victim, arrived home, changed into her pajamas, and fell asleep on the living room floor while watching television.  The victim awoke when Appellee rubbed her stomach.  Appellee pulled down her pajama bottoms, touched her vagina, and engaged in sexual intercourse with her.  Appellee then placed his tongue on her vagina

---

[*]  Former Justice specially assigned to the Superior Court.

and touched her breasts. After Appellee ceased his sexual assault, the victim immediately telephoned her boyfriend, who retrieved the victim from her home. The boyfriend woke up his parents to inform them about the crime, and they took the victim to the state police barracks.

The victim arrived at the police station at 4:30 a.m. on May 16, 2011, and told police about the sexual assault. She also stated that her father drank alcohol and that he was drinking when she arrived at home on May 15th. Police took the victim to a local hospital where evidence was gathered to confirm the occurrence of the sexual assault. Sperm was recovered from an external genitalia swab and a stain on the pajama bottoms.

At 12:20 p.m. on May 16, 2011, Pennsylvania State Police Troopers Franklin D. Linn Jr. and Edward Burns arrived at Appellee's residence. Appellee agreed to accompany them to the police barracks, but advised officers that he needed a ride since he had been drinking alcohol. Appellee told police that he started drinking beer and vodka at 1:00 p.m. on May 15, 2011. Appellee did not remember the victim's arrival at home the previous night. After being advised that the victim accused him of raping her, Appellee responded, "No way." Affidavit of Probable Cause, 5/9/12, at ¶ 5. Appellee gave the identical response when asked if he was so intoxicated that he could not remember sexually assaulting the victim. Appellee then

told police that he was an alcoholic and could not remember anything. Appellee voluntarily gave a DNA sample. Appellee's DNA matched the DNA of the sperm recovered from the victim at the hospital after the sexual assault.

On October 25, 2012, Appellee pled guilty to rape, involuntary deviate sexual intercourse, two counts of sexual assault, incest, corruption of a minor, endangering the welfare of a child, and two counts of indecent assault. An assessment by the Sexual Offenders Assessment Board was ordered, and Appellee was determined not to be a sexually violent predator. The matter proceeded to sentencing on January 30, 2013.

Appellee's attorney, David Warner, spoke first and noted that Appellee was not charged with any crimes until one year after the events transpired. The attorney reported that during that year, Appellee "accepted a large degree of responsibility . . . for changing his life . . . for the better." N.T. Sentencing 1/30/13, at 2. Specifically, "After being an alcoholic for basically his entire adult life, he began treatment at AA and . . . through his church, the bible study, developing a group of friends who could support him so he could finally kick the disease of alcoholism that haunted him for years." *Id*. at 2-3. Appellee also engaged in treatment at a facility called Triad, which is an agency that deals with sexual issues and the type of offenses committed by Appellee, "to deal with the other side of his issues that led to this crime

as well." *Id*. at 3. After Appellee was charged, he immediately consulted with his lawyer and, during the first meeting, told Mr. Warner that "he wished to plead guilty to the charges, to get through them as quickly as possible and not cause any more pain to his family." *Id*. at 2.

Appellee's children, including the victim, wrote letters to the sentencing court and were present at sentencing. They indicated that they "still love their father and they forgive him for what he has done and they have seen an amazing improvement [in] the person he has become in the past two years since he got over alcohol addiction and started to address other issues in his life." *Id*. at 4. Appellee was separated from his wife prior to the events in question, and he had primary physical custody of the children before June 2011, when he moved in with his parents.

Appellee's employer appeared at the hearing and reported the following. Appellee had been employed by the employer's company for fifteen years, was "always a good employee. He had a problem with alcohol that I didn't even know about for a long time." *Id*. at 5. After the incident, the employer "noticed a real change in [Appellee] for the good" and decided to speak at sentencing because he felt Appellee was someone "who would really benefit from mercy rather than judgment." *Id*. at 5. The employer continued that he concluded that the horrible events of May 15, 2011, would not have occurred but for the alcohol.

Appellee's mother informed the court that Appellee took pride in his job as a bricklayer and that it was "very important to him . . . to financially support his children and to be in their lives no matter how simplistic the activity." *Id*. at 6. Prior to May 2011, Appellee spent many hours with his children, including camping, attending their sporting events, speaking with them on the telephone, hiking, bowling, shopping, and going to the movies. Appellee's father confirmed that, immediately after May 2011, Appellee "made choices that have helped him tremendously. Six nights a week he faithfully attends support groups." *Id*. at 9.

Christopher A. Goodling, another witness for Appellee, was involved with Triad. Appellee was involved with that agency since July 2012. Appellee entered the program "accepting full responsibility for the offense." *Id*. at 11. Appellee admitted that his behavior, after consuming alcohol, was unsavory. Mr. Goodling indicated that Triad would continue to work with Appellee until he successfully finished the program, which normally took two to five years. Appellee suffered depression and child abuse, which contributed, along with his intoxication, to his commission of the offense in question. *Id*. at 13.

Appellee's prior record score was zero. The court acknowledged the applicable guideline ranges. *Id*. at 21. It indicated that, in addition to the witnesses who appeared, he received letters from Appellee's children,

including the victim, Appellee's sister and brother-in-law, co-workers, his sponsor at AA, and other people who attended Appellee's AA meetings. The sentencing court indicated that "everybody tells me, you know, there's a Jeremy Hetrick that we see now who is decidedly different than the old Jeremey Hetrick[.]" *Id*. at 21. All the people, including those who wrote letters and those who testified at sentencing, believed that alcohol was a major factor in Appellee's commission of the crimes in question. *Id*.

The district attorney responded that Appellee did not immediately accept responsibility for his actions and had not done so until the results of the DNA testing. However, the sentencing court concluded that Appellee's failure to immediately acknowledge the misdeed was directly the result of the fact that Appellee was too intoxicated to remember the events. *Id*. at 22.

The sentencing court delineated that, based upon the evidence it considered, "this whole aspect of [Appellee's] alcohol abuse – longstanding alcohol abuse, being an alcoholic, being really kind of an unfortunate integral part of why this happened." *Id*. at 24. The court stated that it had often sentenced for these types of crimes and its reaction typically had been that the perpetrator "doesn't deserve any mercy from me. He deserves the full force of the law visited upon him." *Id*. at 25.

The sentencing court clearly articulated why he considered Appellee's case different and why it believed Appellee should be accorded leniency, as follows. First, the court stated: "It's the rare circumstance that I would receive the type of letter that I received from your daughter who was the victim in this case, the very rare circumstance in terms of her forgiveness of you." *Id*. The victim told the court that she believed Appellee's actions were the result of his alcohol abuse. Second, the court considered that immediately after the crime, Appellee addressed his alcoholism and was attending AA meetings daily. Third, the court took into account the reports of Appellee's relatives and co-workers that Appellee's behavior had changed dramatically since he ceased consuming alcohol. Finally, the court considered significant the fact that Appellee's employer was willing to appear on his behalf at the sentencing.

The court continued: "for me to place Mr. Hetrick in jail for the time that the sentencing guideline ranges indicate would not be appropriate in this case. I have considered those guidelines. I have rejected those guidelines." *Id*. at 27. The court declined to apply the guidelines "for a number of reasons which I will make very clear right now." *Id*. First, "The impact from the victim in this case. I took to heart her words and her wishes." *Id*. at 27. Second, the court credited the representations in the letters and from witnesses that Appellee had cured his alcoholism and was a

different man from the one who committed the horrific crimes at issue. Third, the court believed a lenient sentence was appropriate in that the conduct occurred due to "Mr. Hetrick's consumption of alcohol," which was so excessive that he had "no accurate full-blown memory" of the assault." *Id*. at 28. Fourth, the court took "into account [Appellee's] acceptance of responsibility[.]" *Id*. Fifth, the court weighed the fact that Appellee had an "ongoing need to support his family." *Id*. Sixth, the court concluded that the steps that Appellee took by treating his alcoholism and attending the Triad program to address his past sexual abuse and depression, "were legitimate steps to lessen the impact of this circumstance on his family." *Id*.

Accordingly, the court fashioned a sentence below the guidelines that enabled Appellee to continue to support his family while ensuring that Appellee continued to avoid alcohol and to address any other problems that led to his crimes. Appellee was sentenced to jail for eleven and one-half months to two years less one day, with work release privileges, followed by ten years special state probation. After release from prison, Appellee was subject to house arrest with electronic monitoring. As a condition of probation, Appellee had to attend four AA meetings a week and continue with psychological counseling at Triad. He was ordered to have no contact with the victim unless she wanted it.

The Commonwealth filed a timely post-sentence motion for modification of the sentence. This timely appeal followed denial of that motion. The Commonwealth raises this issue on appeal: "Whether the Sentencing Court abused its discretion when it imposed a sentence below the mitigated sentencing range violating the fundamental norms of the sentencing guidelines?" Commonwealth's brief at 6.

We have articulated on numerous occasions that:

> Before this Court may reach the merits of a challenge to the discretionary aspects of a sentence, we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence *see* Pa.R.A.P. 2119(f); and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. If the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Disalvo***, 70 A.3d 900, 902 (Pa.Super. 2013) (citation omitted).

Herein, the claim was preserved in a post-sentence motion and a timely Pa.R.A.P. 1925(b) statement was filed and contained the issue. The appeal is timely, and the Commonwealth's brief contains a Pa.R.A.P. 2119(f) statement of reasons for allowance of appeal. Commonwealth's brief at 11. The sentence in question is not within the guidelines ranges, and the Commonwealth complains that the reasons proffered by the court for the

deviation were insufficient. *Id*. The Commonwealth has therefore raised the existence of a substantial question, permitting appellate review of the sentence in question. *Commonwealth v. Hill*, 66 A.3d 365 (Pa.Super. 2013).

When we review any "challenge to the discretionary aspects of sentencing, we evaluate the court's decision under an abuse of discretion standard." *Commonwealth v. Dodge*, 77 A.3d 1263, 1274 (Pa.Super. 2013) (quoting *Commonwealth v. Stokes*, 38 A.3d 846, 858 (Pa.Super. 2011)). In the seminal case of *Commonwealth v. Walls*, 926 A.2d 957, 964 (Pa. 2007), our Supreme Court stated that, "a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." This rationale is due to the fact that the sentencing court is

> [I]n the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it . . . the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court . . . the guidelines merely inform the sentencing decision.

*Id*., at 965.

This Court's review is confined by the dictate of 42 Pa.C.S. § 9781, which authorizes the appellate court to vacate the sentence and remand the

case to the sentencing court if it finds that the "sentencing court sentenced outside the sentencing guidelines and the sentence is **unreasonable**. In all other cases the appellate court shall affirm the sentence imposed by the sentencing court." *Id*. at § 9781(c)(3) (emphasis added). Section 9781(d) provides that when reviewing a sentence, we must consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation
>
> (3) The findings upon which the sentence was based
>
> (4) The guidelines promulgated by the commission

42 Pa.C.S. § 9781(d). Simply put, the guidelines have no binding effect; they are merely advisory guideposts.

Even further, our Supreme Court in **Walls** noted that the term "unreasonable" generally means a decision that is either irrational or not guided by sound judgment. It held that a sentence can be defined as unreasonable either upon review of the four elements contained in § 9781(d), or if the sentencing court failed to take into account the factors outlined in 42 Pa.C.S. § 9721(b). **Walls, supra** at 964. Section 9721(b) states in pertinent part:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to

the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

Section 9721 also mentions that if a court imposes a sentence outside the sentencing guidelines, "the court shall provide a contemporaneous written statement of the reason or reasons for the deviation . . . [and] his awareness of the sentencing guidelines."

Herein, the sentencing court clearly considered the factors outlined in § 9721(b) and gave overwhelmingly compelling reasons for its decision to deviate from the guidelines, as follows. Appellee had addressed the alcoholism and psychological issues that were the root of the crime. He quickly acknowledged guilt once evidence was presented to him as to a crime that he could not remember committing. Appellee immediately sought to plead guilty to avoid further harm to the victim. Appellee needed to support his family financially and the sentence of county imprisonment with work release permitted him to continue to do so. All of his family members, including the victim, forgave Appellee, wanted him to be afforded leniency, and recognized that the consumption of alcohol caused the behavior in question. These reasons are neither irrational nor unguided by sound judgment. The factors of § 9781(d) warrant affirmance.

We routinely affirm sentences that fall outside the recommended guidelines ranges where the reasons for the deviation were logical and compelling. *See, e.g., Commonwealth v. Hoch*, 936 A.2d 515 (Pa.Super.

2007 (affirming sentence that fell below mitigated range where it was adequately supported by logical justifications).[1]  We reject the Commonwealth's position that the factors relied upon by the sentencing court in imposing this mitigated sentence were insufficient.

On appeal, the Commonwealth focuses on the seriousness of the crime.  It also insists that the sentence sent a bad message to the community that alcohol can be used as an excuse for criminal behavior and that the sentence will inhibit victims of sexual abuse from reporting crimes.  These positions are nothing more than a request for us to hold that these two factors, *i.e.*, the protection of the public and the gravity of the offense, outweigh the ones relied upon by the court.  However, this type of allegation cannot form the basis for reversal of the present sentence.

It is clear that the sentencing court considered all of the pertinent factors.  It acknowledged the seriousness of the offenses at the sentencing hearing.  It also concluded that Appellee, who had no prior record score, was no longer a danger to the community since he had addressed the root of the criminal behavior in that he had not consumed any alcohol for a significant period of time and was enrolled in the Triad program.  We simply are not permitted to reverse a sentence based upon the weight that the court gave to the various factors involved in a sentencing decision.  ***Commonwealth v.***

---

[1] There are myriad cases affirming an **upward** guideline departure.

***Bricker***, 41 A.3d 872 (Pa.Super. 2012); ***Commonwealth v. Macias***, 968 A.2d 773, 776 (Pa.Super. 2009).  Hence, we must affirm.  ***Walls, supra***.

Judgment of sentence affirmed.

Judge Olson joins the memorandum.

Justice Fitzgerald files a Dissenting Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2014