J-A16044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHASE SHOMO JOHNSON | : | |
| | : | |
| Appellant | : | No. 1342 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 25, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013051-2019

BEFORE: KUNSELMAN, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:　　　　　　**FILED: OCTOBER 9, 2024**

Chase Shomo Johnson appeals from the judgment of sentence entered following his guilty plea to persons not to possess a firearm and firearms not to be carried without a license.[1] He challenges the discretionary aspects of his sentence. We affirm.

At the guilty plea hearing, the Commonwealth summarized the facts as follows:

> [H]ad this case proceeded to trial, the Commonwealth would have called officers from the Wilkinsburg Police Department and state parole agents who would have testified that on November 5, 2019, officers responded to [a residence on] Sylvan . . . Terrace to assist the parole agents in the arrest of a parolee.
>
> Upon arrival, officers met with the state parole agents who had [Johnson] detained. Agents had arrived to conduct an unannounced curfew check when they found [Johnson] in

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), respectively.

the driver seat of a vehicle. [Johnson] was alerted to the officers' presence and proceeded to drive his vehicle towards the officers. [Johnson] was ordered to stop but refused.

Officer Eilenfeldt . . . then exited the vehicle, grabbed ahold of [Johnson's] driver-side door handle, and had [Johnson] stop. [Johnson] exited the vehicle and was taken into custody.

Upon an inventory search of [Johnson's] vehicle, officers located a black Glock 357 caliber pistol in plain view on the driver's side floor. The firearm was loaded with a round in the chamber and had an extra magazine nearby.

The gun was transported to the Allegheny County Medical Examiner's Office where it was test fired and found operable under Lab Number 19 LAB 09150. [Johnson] did not have a valid license to carry at the time of this incident and is a person not to possess pursuant to a previous felony conviction of possession with intent to deliver.

[Johnson] had two previous convictions for violations of Chapter 6105 and one previous conviction for 6106.

N.T., May 23, 2022, at 10-12.

The court held a sentencing hearing immediately following the plea hearing. Probation Officer Michelle Contis testified that the probation department had been supervising Johnson on a seven-year special probation. She testified that the probation department could not safely supervise Johnson:

[Johnson] has received convictions of carrying a firearm, possession of a firearm. We are currently supervising him for possession of a firearm prohibited, and now here we are today and he has pled guilty to another firearm charge.

At this point, we cannot safely supervise Mr. Johnson in the community without there being a concern for the public safety.

- 2 -

*Id.* at 17. She stated that he was released from prison on October 1, 2019, and was found with the firearm on November 6, 2019, *i.e.*, a month and five days following his release. *Id.* at 19.

Johnson's mother testified that Johnson has mental health problems, some of which stem from when Johnson was 10 years old and witnessed her being shot in the head by a rapist. *Id.* at 20-21. She testified that he is now taking his medication and she sees a big difference in him, including that he no longer is paranoid. *Id.* at 23. Johnson also spoke, stating that his criminal cases stemmed from his mental illness, due to the trauma and crime he had witnessed. *Id.* at 29-30. Johnson also presented the court with a life history report. *Id.* at 24.

Johnson's counsel noted that the doctor at Torrence State Hospital stated the if Johnson took his medications, "he should not represent a danger to the community." *Id.* at 25. His counsel further noted that Johnson suffers from Post Traumatic Stress Disorder and Schizophrenia, which "result[s] in extreme paranoia and fear for his own safety and fear for his mother's safety." *Id.* at 26. He noted that Johnson's brother was murdered and Johnson was shot. *Id.* Johnson's counsel requested that the sentence be fashioned so that Johnson could be paroled to justice related services, which would include treatment at a group home community residential rehabilitation program. Counsel said the program would allow Johnson to get a "handle on his mental health." *Id.* at 27-29.

The court stated that it "underst[oo]d [Johnson] had mental health issues" and that there had been "much loss and . . . trauma in [his family.]" *Id.* at 31. The judge said he could not "begin to imagine the impact" Johnson's witnessing his mother's traumatic event had had on Johnson, and that Johnson had lost a brother to gun violence. *Id.* The court further pointed out that Johnson had three previous firearm convictions and Johnson himself had been shot, "all in the context of" the shootings of him and his family members. *Id.* at 32-33. The court pointed out that a month after his release from prison, Johnson was arrested on another firearm case. *Id.* The court then reasoned:

> I understand you have mental health issues. When does it stop? When, when, when do we stop carrying guns because of a perceived threat or because of a fear of what might happen because your brother already lost his life like that? Your mother was shot by a gun? You've been shot by a gun. So when should we expect something different? I mean, when can get to a place where we're saying, okay, put the guns down?
>
> Because you've been wasting a lot of time. You've wasted a lot of time going in and out of prison.

*Id.* at 33-34. The court noted it had to balance the proposed treatment plan with "the fact that this is [Johnson's] fourth gun conviction," and Johnson had committed the crime approximately 30 days after his release from prison. *Id.* at 34. The court noted the lowest standard range sentence was seven years' imprisonment for one charge and three and a half years' imprisonment for the other charge. *Id.* at 38.

The court sentenced Johnson to six to 12 years' incarceration for the possession of firearm prohibited conviction and a two year term of probation

for the carrying a firearm without a license conviction, consecutive to the term of incarceration.

Johnson filed a post-sentence motion, which the trial court denied. Johnson appealed, and this Court concluded the court had imposed an illegal sentence because it failed to determine Johnson's eligibility under the Recidivism Risk Reduction Incentive Act ("RRRI"). We vacated the sentence and remanded for resentencing. **Commonwealth v. Johnson**, No. 802 WDA 2022, 2023 WL 4542083 (Pa.Super. filed July 14, 2023) (unpub. mem.).

At a resentencing hearing, Johnson's mother again testified, stating that Johnson remained on his medication, was being interviewed for the honors block, and was going to go to school. N.T., Sept. 25, 2023, at 6. Johnson stated that the only reason "a gun would be around [him] is for protection." **Id.** at 20. The court then stated:

> Here is the thing. Think about all the things you observed, all of the behaviors that have impacted your life, they all stem from what? Gun violence. And you keep carrying guns.
>
> And I guess the question is, how does any of it ever get better if everybody is carrying guns and everyone has a gun for protection? If everybody would put the guns down, including yourself. In light of your record and in light of the terms of your probation and parole and different things you are facing, you continue to carry guns. And sometimes, Mr. Johnson, it is within 30 days of your release from prison for a gun conviction, you pick up a gun.

**Id.** The court stated that it reviewed the arguments of counsel, Johnson's and his mother's testimony, and the guidelines. **Id.** at 27. The court noted it

understood Johnson had been through a lot and had mental health issues, but it did not "change the fact that the behavior [was] egregious." *Id.* at 27-28.

The trial court sentenced Johnson to six to 12 years of incarceration for the possess of firearm prohibited conviction and a consecutive term of 18 months' probation for the firearms not to be carried without a license conviction. It found him ineligible for RRRI. Johnson filed a post-sentence motion, which the trial court denied. Johnson filed a timely notice of appeal.

Johnson raises the following issue:

> Whether the Trial Court abused its sentencing discretion by failing to apply all relevant sentencing criteria, including the protection of the public, the gravity of the offense, and Mr. Johnson's character and rehabilitative needs, as required by 42 Pa. C.S.A. § 9721(b)?

Johnson's Br. at 5.

Johnson challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa.Super. 2018). Before reviewing the merits of Johnson's claim, we must determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." *Commonwealth v. Green*, 204 A.3d 469, 488 (Pa.Super. 2019); *see also* Pa.R.A.P. 2119(f) (stating that an appellant who challenges

the discretionary aspects of a sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of [the] sentence").

Johnson's appeal is timely and he preserved his claim in a post-sentence motion. Further, his brief includes a statement of reasons for allowance of appeal, and he raises a substantial question – whether the court erred in focusing on Johnson's criminal history and failing to consider "mandatory sentencing factors under 42 Pa. C.S.A. § 9721(b); namely, Mr. Johnson's treatment and rehabilitative needs." Johnson's Br. at 20; ***Commonwealth v. Johnson-Daniels***, 167 A.3d 17, 27 (Pa.Super. 2017) (assertion that sentence does not comport with protection of public, gravity of offense, and rehabilitative needs raises substantial question). We will therefore consider the merits of his sentencing claim.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Edwards***, 194 A.3d 625, 637 (Pa.Super. 2018) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Id.*** (citation omitted). In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). In conducting

appellate review, we "cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa.Super. 2009).

Here, the trial court found the sentence imposed complied with Section 9721(b) and the record established the court considered all relevant factors:

> Contrary to [Johnson's] argument that six to twelve years violates sentencing law, the record shows that the sentence imposed complies with Section 9721(b). [Johnson's] argument that the [c]ourt only considered Mr. Johnson's criminal history is undermined by the record. During the initial sentencing hearing, the [c]ourt heard testimony from [Johnson's] mother, Stephanie Johnson. Ms. Johnson explained that when [Johnson] was young, he witnessed his mother being shot in the head by a rapist. Ms. Johnson provided the [c]ourt with a history of [Johnson's] mental health treatment. During the initial sentencing hearing, the [c]ourt said, "Mr. Johnson, I understand that you have mental health issues. I think the thing that is unfortunate for me is that there is so much loss and trauma in your family . . . . So your mother has gone through a very traumatic event. And I can't begin to imagine the impact that has had on you."
>
> During the resentencing, the [c]ourt considered the evidence presented by the defense. Once again, along with the argument of counsel, the [c]ourt heard testimony from Stephanie Johnson and [Johnson]. While addressing [Johnson's] mother, the [c]ourt said, "I understand your son has had some traumatic experiences like that. That's not lost to me. I don't minimize that." In addition to traumatic episodes and their impact, the [c]ourt heard testimony regarding [Johnson's] treatment. In imposing sentence, the [c]ourt stated, "I understand he has issues. He has mental health issues." In summary, the transcripts show that the [c]ourt was made aware of [Johnson's] mental health issues and the traumatic events that precipitated his psychological profile. [Johnson's] claim that the [c]ourt focused on [Johnson's] criminal history to the exclusion of other sentencing factors is contradicted by the record.

[Johnson] is a repeat felon. Count one, persons not to possess . . . has an offense gravity score of 11. The standard guideline imprisonment range at count one is 84 to 102 months. According to [Johnson's] guidelines, the six year term imposed by the [c]ourt was a mitigated range sentence for count one. With respect to the offense conduct, the instant case was [Johnson's] fourth gun possession conviction and it occurred while he was under supervision. Not only did [Johnson] possess a loaded firearm when he was encountered by Parole Board Agents, he possessed extra ammunition, ignored the commands of the arresting officers and drove his vehicle towards law enforcement personnel. During the sentencing hearing, the [c]ourt heard testimony from Probation Officer Michelle Contis who summarized [Johnson's] criminal record, including multiple gun convictions. PO Contis noted that the Probation Office was supervising [Johnson] for possession of a firearm prohibited and that the instant violation involved a guilty plea to another firearm charge. PO Contis testified, "At this point we cannot safely supervise Mr. Johnson in the community without there being a concern for the public safety."

In summary, the sentence imposed complies with Section 9721. The [c]ourt accepted and reviewed all of the mitigating evidence offered by the defense. The [c]ourt considered the need for treatment and rehabilitation and determined that the mitigated range sentence and concurrent penalty on the probation violation would permit [Johnson] to address these concerns sooner than later. The six to twelve year term imposed is warranted due to the gravity of the offense, the impact of [Johnson's] continued firearm possession on the public and the inability of the probation office to supervise [Johnson] without concern for public safety. Overall, the mitigated range sentence imposed reflects that the [c]ourt considered [Johnson's] mental health background and treatment needs and properly weighed these concerns with the concern for public safety. It was this balancing that contributed to the imposition of a mitigated range sentence, the minimum penalty identified by sentencing law in this case.

Trial Court Opinion, filed Jan. 10, 2024, at 4-6 (citations to record omitted).

The trial court did not abuse its discretion. The court considered all evidence, including the evidence of Johnson's mental health issues and the traumas he had suffered. However, the court also considered Johnson's criminal record and that he had numerous convictions for firearm offenses, including convictions stemming from possessing a firearm while on probation approximately a month after his release from prison on firearm convictions. The court imposed a mitigated-range sentence. This was not an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/9/2024