**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSE M. SERRANO | : | |
| | : | |
| Appellant | : | No. 2110 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001107-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSE M. SERRANO | : | |
| | : | |
| Appellant | : | No. 2111 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001108-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSE M. SERRANO | : | |
| | : | |
| Appellant | : | No. 2112 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001109-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-S17027-25

<table>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>JOSE M. SERRANO</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Appellant</td><td>:</td><td>No. 2113 EDA 2024</td></tr>
</table>

Appeal from the Judgment of Sentence Entered March 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001110-2020

<table>
<tr><td>COMMONWEALTH OF PENNSYLVANIA</td><td>:</td><td>IN THE SUPERIOR COURT OF</td></tr>
<tr><td></td><td>:</td><td>PENNSYLVANIA</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>v.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>JOSE M. SERRANO</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Appellant</td><td>:</td><td>No. 2114 EDA 2024</td></tr>
</table>

Appeal from the Judgment of Sentence Entered March 15, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001111-2020

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:              **FILED AUGUST 26, 2025**

Jose M. Serrano appeals from the judgment of sentence entered following his guilty pleas to charges filed in five separate dockets. He challenges the denial of his motion to withdraw his pleas and the discretionary aspects of his sentence. We affirm.

The Commonwealth gave the following recitation of the underlying facts at the guilty plea hearing:

> [S]tarting with the docket number ending in 1107-2020, the complainant in that case is initials S.P. and is [Serrano's] stepdaughter. If the Commonwealth -- if this case would

have moved forward to trial, the Commonwealth would have shown that from May of 2015 to December of 2019, at or near the 2000 block of North Randolph Street in the city and county of Philadelphia, [Serrano] on multiple occasions put his finger in the complainant, S.P.'s, vagina, which S.P. said hurt.

And on one occasion she felt blood come out of her private. S.P.'s date of birth is [in July 2008], making her 7 to 11 years-old at the time of the assaults. [Serrano] was the child's stepfather, lived at the home, and sometimes was the only adult watching the child. The child gave a forensic interview on December 4, 2019 and testified at a preliminary hearing o[n] February 5, 2020 via CCTV.

On the docket number ending in CP-1108-2020, the complaining witness in that case is initial[s] Z.N. and was [Serrano's] stepdaughter. If this case had proceeded to trial the Commonwealth would have shown that from May of 2015 to December of 2019, at or near the 2000 block of North Randolph Street in the city and county of Philadelphia, [Serrano] on multiple occasions put his finger in the complainant, Z.N.'s butt and vagina, which Z.N. said felt disgusting.

[Serrano] also put his penis in Z.N.'s mouth on multiple occasions, shoving it down her mouth which made her feel like she was going to throw up. Z.N.'s date of birth is [in] December . . . 2012, making her 2 to 6 years-old at the time of these assaults. [Serrano] was her stepfather, lived in the home, and was sometimes the only adult present watching the child. The child gave a forensic interview on December 4, 2019 and testified at a preliminary hearing on February 5, 2020 via CCTV.

The docket number ending in 1109-2020, [the] complainant in that case is initial[s] L.S. and was [Serrano's] daughter. If this case had proceeded to trial the Commonwealth would have shown that from May of 2013 to December of 2019, at or near the 2000 block of North Randolph Street in the city and county of Philadelphia, [Serrano] on multiple occasions put his finger in the complainant, L.S.' vagina, which felt rough and like he was scraping her because of his rough fingernails.

L.S.' date of birth is [in] June . . . 2010, making her 4 to 9 years-old at the time that these assaults occurred. [Serrano] was her father and was sometimes the only adult home watching the child. The child gave a forensic interview on December 4, 2019 and testified at a preliminary hearing via CCTV on February 5, 2020.

On the docket number ending in 1110-2020, the complainant's initials in this case are M.S. And it's [Serrano's] daughter. If this case had proceeded to trial the Commonwealth would have shown that from May of 2018 to December of 2019, at or near the 2000 block of North Randolph Street in the city and county of Philadelphia, [Serrano] on multiple occasions put his finger inside the complainant, M.S.' vagina, which she said hurt, because his finger was fatter than the hole.

[Serrano] told M.S. to be quiet when she said, "Stop it," because it hurt, and told her not to tell her mom. M.S.' date of birth is [in] January . . . 2012, making her 6 to 7 years-old when these assaults occurred. [Serrano] was her father and was sometimes the only adult present watching the child. The child gave a forensic interview on December 4, 2019 and testified at a preliminary hearing on February 5, 2020 via CCTV.

On the docket number ending in 1111-2020, the complainant's initial[s] are B.C. And the complainant in this case was [Serrano's] goddaughter. If this case had proceeded to trial the Commonwealth would have shown that from May of 2016 to December of 2019, at or near the 2000 block of North Randolph Street in the city and county of Philadelphia, [Serrano] on multiple occasions put his finger inside the complainant, B.C.'s vagina and said his fingers were wiggling and it hurt.

[Serrano] on multiple occasions also asked the complainant, B.C., to put his penis in her mouth, exposed his penis, and tried to put his penis in her mouth. B.C.'s date of birth is [in] December . . . 2009, making her 6 to 9 years-old at the time of these assaults.

[Serrano] was the child's godfather and was sometimes the only adult watching the child. The child gave a forensic interview on December 10, 2019 and testified at a

preliminary hearing on February 5, 2020 via CCTV. And [Serrano's] date of birth is February 21, 1987.

N.T. Guilty Plea Hearing, 4/14/23, at 18-22.

On April 14 2023, Serrano entered a non-negotiated guilty plea at all five dockets. Serrano pleaded guilty to:

- unlawful contact with a minor, aggravated indecent assault, endangering the welfare of a child ("EWOC"), corruption of minors, and indecent assault on Docket CP-51-CR-0001107-2020 (victim S.P.);

- rape of a child, involuntary deviate sexual intercourse ("IDSI") of a child, unlawful contact with a minor, aggravated indecent assault, EWOC and corruption of minors on Docket CP-51-CR-0001108-2020 (victim Z.N.);

- aggravated indecent assault, EWOC, corruption of minors, and indecent assault on Docket CP-51-CR 0001109-2020 (victim L.S.);

- unlawful contact with a minor, aggravated indecent assault, EWOC, corruption of minors, and indecent assault on Docket CP-51-CR-001110-2020 (victim M.S.); and

- solicitation of IDSI, unlawful contact with a minor, aggravated indecent assault, EWOC, corruption of minors, indecent assault, and indecent exposure on Docket CP-51-CR-0001111-2020 (victim B.C.).

The court sentenced Serrano to an aggregate term of 22 to 48 years of incarceration, followed by three years of probation. Serrano filed a post-sentence motion, which was denied by operation of law. This timely appeal followed.

Serrano raises the following issues:

> [1.] Is a manifest injustice present where the guilty pleas were not entered into knowingly, intelligently and voluntarily, as [Serrano] asserts innocence as to certain facts from the Commonwealth's facts summation, as displayed by [Serrano's] great initial hesitation and unwillingness to adopt the facts at the plea, which is akin to an assertion of innocence to facts. Also, although the Court made very clear that a Spanish interpreter was available for [Serrano] and [Serrano] declined one, [Serrano's] native and primary language is Spanish (has limited English proficiency), not using an interpreter at the plea diminished his understanding and the voluntariness of the plea?

> [2.] Was the consecutive nature of the sentence excessive, more than necessary to protect the public, vindicate the victims, and rehabilitate [Serrano], where [Serrano] accepted responsibility by pleading guilty, had a prior record score of "0", and despite a difficult childhood to include a dependency history, he is a strong candidate for rehabilitation as he has a meaningful work history as evidenced by his car mechanic business?

Serrano's Br. at 7 (issues reordered).

Serrano first claims the guilty pleas were entered into unknowingly, unintelligently, and involuntarily. *Id.* at 19. He maintains that he entered the guilty pleas "not adequately understanding what he was doing" because Spanish is his first language and his English proficiency is limited. *Id.* Serrano emphasizes that he does not read or write English, and he dropped out of

school in 10th grade due to English language difficulties. *Id.* Serrano acknowledges that he did not request a court-certified interpreter and declined the court's offer of assistance but argues that his limited English proficiency made the guilty pleas "patently deficient." *Id.* at 34, 35. He points out that his hesitation at the plea hearing in agreeing to the Commonwealth's recitation of facts was "akin to factual innocence as to some of the facts," thus making his pleas unreliable. *Id.* at 19, 36.

"[T]he decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court." *Commonwealth v. Hart*, 174 A.3d 660, 664 (Pa.Super. 2017). "There is no absolute right to withdraw a guilty plea." *Commonwealth v. Broaden*, 980 A.2d 124, 128 (Pa.Super. 2009). When a defendant seeks to withdraw a guilty plea after sentencing, he "must demonstrate prejudice on the order of manifest injustice[.]" *Commonwealth v. Yeomans*, 24 A.3d 1044, 1046 (Pa.Super. 2011) (citation omitted). Manifest injustice "may be established if the plea was entered into involuntarily, unknowingly, or unintelligently." *Id.*

Before accepting a plea, the trial court must conduct an on-the-record inquiry to determine whether the plea is knowingly, intelligently, and voluntarily tendered. *Commonwealth v. Hodges*, 789 A.2d 764, 765 (Pa.Super. 2002) (citing Pa.R.Crim.P. 590). The court must develop a record that affirmatively shows that the defendant understands: (1) the nature of the charges to which the defendant is pleading guilty; (2) the factual basis for the plea; (3) the right to a jury trial; (4) the presumption of innocence; (5) the

- 7 -

permissible ranges of potential sentences and fines; and (6) that the court is not bound by the terms of the agreement unless it accepts it. ***Commonwealth v. Kelley***, 136 A.3d 1007, 1013 (Pa.Super. 2016). In deciding whether a guilty plea was knowing, intelligent, and voluntary, a court should consider the totality of the circumstances surrounding the entry of the plea. ***Commonwealth v. Allen***, 732 A.2d 582, 588-89 (Pa. 1999). There is a presumption that a plea was knowing, intelligent, and voluntary, and the defendant bears the burden of proving otherwise. ***Commonwealth v. Pollard***, 832 A.2d 517, 523 (Pa.Super. 2003). Furthermore, a defendant who elects to plead guilty is required to answer all questions during the plea colloquy truthfully and may not later assert grounds for withdrawing the plea that contradict the defendant's statements during the colloquy. ***Id.***

Here, at the start of the guilty plea hearing, Serrano's counsel stated that although Serrano could not read or write English, "[h]e does understand English. We have no trouble communicating." N.T. Guilty Plea Hearing at 4. Counsel informed the court that he had fully explained the written plea colloquy to Serrano prior to the hearing. ***Id.*** The court confirmed with Serrano that he understood spoken English:

> THE COURT: . . . I understand that you can't read or write English.
>
> But it's fair to say that you understand English. Yes?
>
> MR. SERRANO: Yes. My first language is Spanish. I know more Spanish than English.

> THE COURT: Okay. Well for the record, your English sounds pretty good so far. And if at any point you're having an issue, let me know, and we'll do our best to accommodate you.

*Id.* at 13.

The court then conducted an on-the-record, oral colloquy in which Serrano acknowledged that he was presumed innocent, the Commonwealth had the burden of proving him guilty beyond a reasonable doubt, and he had a right to a trial before a jury. *Id.* at 14-15. Serrano also confirmed that he was pleading guilty of his own free will and he was satisfied with his counsel's representation. *Id.* at 16-17. The court explained the nature of the charges to which Serrano was pleading guilty and his range of potential sentences. *Id.* at 9-12. Serrano responded that he understood the charges. *Id.* at 12.

After the Commonwealth stated the factual basis for the pleas, the following exchange occurred:

> THE COURT: Sir, did you hear those facts?
>
> MR. SERRANO: Say that again?
>
> THE COURT: Did you hear what the Commonwealth put onto the record?
>
> MR. SERRANO: Yes.
>
> THE COURT: Are those the facts which you're basing your guilty pleas here today?
>
> MR. SERRANO: The fact today?
>
> [DEFENSE COUNSEL]: Are those the facts?
>
> THE COURT: Are those the facts in which you're basing your guilty pleas here today?
>
> MR. SERRANO: That, yeah. No. It's a lot to me. **But, yeah. Yes.**

> THE COURT: So I'm sorry. The Commonwealth put –
>
> [DEFENSE COUNSEL]: Can I have a moment?
>
> THE COURT: -- yeah.
>
> [DEFENSE COUNSEL]: Thanks, Judge. I appreciate that.
>
> THE COURT: Yeah. Sure.
>
> So the Commonwealth had just done a recitation of the facts that would be presented at trial. Are those the facts which you're basing your guilty plea here today?
>
> MR. SERRANO: **Yes, sir.**

*Id.* at 22-23 (emphasis added).

Upon review, we find the trial court made the required inquiries and the record provides no basis for concluding that Serrano's guilty pleas were not knowing, intelligent, and voluntary. The court adequately addressed Serrano's English proficiency and at no time did Serrano state that he did not understand the proceedings or did not wish to plead guilty. Instead, Serrano unequivocally testified during the colloquy that he entered into the plea agreement voluntarily and understood its terms, and those statements bind him. *Pollard*, 832 A.2d at 523. Contrary to Serrano's assertion that he did not understand the factual basis of the pleas due to his limited English proficiency, the record indicates that the court asked Serrano if he understood English, and Serrano answered that he did. For added measure, the court told Serrano to let it know if he did not understand so it could take steps to ensure that he did, and without at any time saying that he did not understand, Serrano then twice agreed to the Commonwealth's recitation of the facts. The court did not abuse its discretion in denying Serrano's post-sentence motion to withdraw his pleas.

Serrano next challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." **Commonwealth v. Conte**, 198 A.3d 1169, 1173 (Pa.Super. 2018). Before reviewing the merits of Serrano's claim, we must determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." **Commonwealth v. Green**, 204 A.3d 469, 488 (Pa.Super. 2019); **see also** Pa.R.A.P. 2119(f) (stating that an appellant who challenges the discretionary aspects of a sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, Serrano has complied with the first three requirements: his appeal is timely, he preserved the issue in a post-sentence motion, and his brief includes a statement of the reasons for allowance of appeal. We now turn to whether Serrano has raised a substantial question.

A substantial question exists when the appellant makes a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. **Commonwealth v. Moury**, 992

A.2d 162, 170 (Pa.Super. 2010). Serrano's Rule 2119(f) statement claims that the trial court disregarded his rehabilitative potential and mitigating factors and sentenced him to an excessive consecutive-in-nature sentence. Serrano's Br. at 20. This presents a substantial question. *See Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa.Super. 2015) (finding challenge to consecutive sentences, combined with claim that the court had disregarded appellant's rehabilitative needs and mitigating factors, stated a substantial question).

Serrano argues that the trial court abused its discretion in imposing an excessive sentence. Serrano acknowledges that the sentences on the lead charges on each docket were within the sentencing guidelines. Serrano's Br. at 27. However, he asserts that the court placed undue weight on the facts of the case and the impact on the victims and failed to properly consider mitigating factors, including Serrano's offense gravity score of zero; his employment history as a mechanic and operating his own business; his acceptance of responsibility by pleading guilty; his need for treatment as to marijuana use disorder; his need for educational intervention, since he dropped out of tenth grade due to language barriers; and the fact that he was in the Department of Human Services' dependency system due to parental neglect and/or abuse. *Id.* at 23-24, 27-28. In Serrano's view, the trial court "abused discretionary aspects of sentencing by allowing one factor [to] overwhelm the other factors when entering the sentence" and "[t]he consecutive nature of the sentence coupled by a lack of consideration for

mitigation and need for rehabilitation was contrary to sentencing norms." *Id.* at 31.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Edwards*, 194 A.3d 625, 637 (Pa.Super. 2018) (citation omitted). An abuse of discretion occurs where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* (citation omitted). In imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). Where the sentencing court has the benefit of a pre-sentence investigation report ("PSI"), we presume the court was aware of all appropriate sentencing factors and considerations and consider the requirement that the court place its reasoning on the record to be satisfied. *Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 26 (Pa.Super. 2017). In conducting appellate review, we may not reweigh the sentencing factors and impose our own judgment in place of that of the trial court. *See Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009).

Here, the trial court did not abuse its discretion in imposing Serrano's sentence. The court had a PSI report and is presumed to be aware of all appropriate sentencing factors and considerations. Further, the court

considered Serrano's offense gravity score of zero, the arguments of counsel, the sentencing guidelines, and the victim impact statements. *See* N.T. Sentencing, 3/15/24, at 42-43. The court also considered that Serrano, through his counsel, took responsibility for his crimes and expressed remorse and a willingness to be rehabilitated. *Id.* at 17. The court explained that it imposed consecutive sentences because "[e]ach of these dockets relate to a distinct individual and distinct crime." *Id.* at 44-45. This was completely proper. An appellant is not entitled to a "volume discount" for his crimes by having the sentences run concurrently. *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa.Super. 2014) (citation omitted). The record thus demonstrates that the court properly considered "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/26/2025